## S00A0545. WINN v. THE STATE.
(531 SE2d 717)

SEARS, Justice.

Appellant Tyrone Winn appeals his convictions for murder, armed robbery, aggravated assault, and illegal firearm possession,[1] claiming the jury's verdicts were not supported by the evidence and

[1] The crimes were committed early in September 1998, and appellant was indicted on December 11, 1998 for malice and felony murder, aggravated assault, armed robbery, possession of a firearm during the commission of a crime, and recidivism. Trial commenced on October 11, 1999 and on October 14, 1999, the jury returned verdicts of guilty on all counts. The trial court sentenced appellant to life sentences for malice murder and armed robbery (with the felony murder conviction being vacated by operation of law), a 20-year consecutive sentence for aggravated assault, and a five-year consecutive sentence for illegal firearm possession. On November 12, 1999, appellant timely filed a notice of appeal. The appeal was docketed with this Court on December 16, 1999, and submitted for decision without oral argument.

that the prosecutor engaged in cross-examination so inflammatory and prejudicial as to deny appellant his right to a fair trial. Having reviewed the record, we conclude that the jury's verdicts are supported by the evidence of record. We also find that the prosecutor's cross-examination of a defense witness was proper in light of evidence suggesting that there may have been an attempt to exert improper influence upon the witness. Therefore, we affirm.

The evidence of record was sufficient to enable a rational trier of fact to find the following: The body of Johnnie Waters was discovered lying face-down on a bed in his home. Waters had died of a gunshot wound to his head. There were also knife wounds on his neck, which were determined to have been inflicted post-mortem. When found, the body was in a state of early decomposition.

Appellant's acquaintance Shane Cline testified that appellant admitted to him that he had killed Waters and had stolen Waters' car. Cline also testified that he observed appellant rummaging through a car that matched the description of the victim's car, and that when he asked appellant to whom the car belonged, appellant responded that it was "Johnnie's car." At least one other witness saw appellant rummaging through the same car, and two other witnesses testified that they heard appellant discussing "Johnnie's car."

Forensic evidence indicates that the victim died of gunshots fired from a .32 caliber pistol, and several witnesses testified that they observed appellant wielding a large pistol in the time period immediately following the murder. One of those witnesses testified that appellant had exhibited a gun in her presence and that she had recovered bullets he had dropped on the floor of her bedroom. Those bullets, however, did not correspond to the ones found at the scene of the murder.

Additionally, two State's witnesses testified that appellant told them he had been involved in a murder, and appellant's aunt testified that appellant told her he had killed a neighbor by shooting him between the eyes, and that it had given him "a rush." Finally, a woman acquainted with appellant testified that when she asked him who had given him a black eye, he responded that he had killed the person responsible for it.

At trial, appellant claimed that he and his acquaintance Cline had gone to see the victim in order to borrow money, and while at the victim's home, Cline had shot and killed the victim. Several witnesses testified on appellant's behalf and implicated Cline in the murder; three of those witnesses testified that in their presence, Cline had admitted involvement in the killing. For his part, Cline denied any involvement in the shooting. He claimed he had spent the night of the murder with Powell, appellant's cousin. Powell testified that Cline was with her on that night, but conceded that because she

had fallen asleep she could not account for Cline's whereabouts the entire evening.

1. The evidence of record was sufficient to enable a rational trier of fact to find appellant guilty of the crimes for which he was convicted.[2] As the trier of fact, the jury was free to discredit appellant's evidence that it was Cline who committed the murder, and to accept the State's evidence implicating appellant.[3]

2. During cross-examination of defense witness Douglas, the prosecutor questioned whether he had been asked to omit portions of the truth from his testimony. Douglas identified a defense investigator in the courtroom and said that when they spoke together, the investigator had asked Douglas to "leave some things out" of his testimony. On redirect examination, Douglas stated that neither defense counsel nor the defense investigator had ever actually told him to lie or to deceive anyone while testifying, but rather that the investigator had indicated to Douglas that the defense would not be asking about certain things pertaining to the murder. Based upon the State's questioning of Douglas, appellant moved for a mistrial. The motion was denied. However, the trial court instructed the jury that the defense's actions with regard to Douglas were not improper.

Appellant claims his mistrial motion should have been granted because the State's cross-examination of Douglas was so inflammatory and prejudicial that it violated appellant's right to a fair trial. We disagree. Appellant is, of course, correct that the State may not introduce prejudicial extrinsic matter to the record that is calculated to inflame the jury and unduly prejudice a defendant.[4] However, credible evidence of an attempt to influence the testimony of a witness is always admissible.[5] Our review of the entire record, and Douglas's testimony in particular, demonstrates that there was a reasonable basis for the State's inquiry into potential witness tampering, and that in all likelihood the State was motivated by a desire to elicit the truth regarding that potential rather than a desire to inflame the jury's passions and unduly prejudice appellant.[6] When, through cross- and redirect examination, that truth was determined, the trial court carefully informed the jury that the defense had not engaged in witness tampering, thereby alleviating the possibility of

---

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). In reaching this conclusion, we note that appellant's claim that the evidence was insufficient to support his conviction for felony murder is moot, as the trial court entered a judgment of conviction and sentence only on appellant's conviction for malice murder. *Boddy v. State*, 265 Ga. 498, 499 (458 SE2d 630) (1995); see *Holiday v. State*, 258 Ga. 393 (369 SE2d 241) (1988).

[3] *Knight v. State*, 271 Ga. 557 (521 SE2d 819) (1999).

[4] See *Bell v. State*, 263 Ga. 776 (439 SE2d 480) (1994).

[5] Daniel, *Georgia Handbook on Criminal Evidence*, § 4-39 (1998).

[6] See *Moses v. State*, 270 Ga. 127, 129 (508 SE2d 661) (1998).

residual harmful effects from the State's line of questioning. For these reasons, we reject appellant's contention that his mistrial motion should have been granted.

*Judgment affirmed. All the Justices concur.*

DECIDED JUNE 12, 2000.

*William A. O'Dell,* for appellant.

*Tambra P. Colston, District Attorney, Martha P. Jacobs, Fred R. Simpson, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Wylencia H. Monroe, Assistant Attorney General,* for appellee.