S06A0429. KELL v. THE STATE.
(631 SE2d 679)

HUNSTEIN, Presiding Justice.

Billy Ray Kell was convicted of malice murder in the beating death of Earl Roberts and appeals from the denial of his motion for new trial,[1] raising various challenges to evidence introduced at trial.

---

[1] The crimes occurred on August 7, 2003. Kell was indicted October 31, 2003 in Fulton County on charges of murder, felony murder and aggravated assault. He was found guilty of all charges on September 14, 2004 and was sentenced the following day to life imprisonment. His

For the reasons that follow, we find that the trial court committed reversible error by allowing the State to question witnesses regarding efforts by appellant's family to obtain letters appellant wrote to his wife.

1. The State's evidence reflected that shortly after appellant began working at a plumbing company on June 20, 2003, appellant rented from the victim a back room in the building where the victim's office was located as a residence for appellant, his wife and their young son. The building was located two doors down from the plumbing company. On the day of the crime, appellant left work at 10:34 a.m. The victim, who was a 74-year-old dental technician, was found beaten to death by police who responded to a 911 call placed by appellant at 4:53 p.m. Based on sightings of the victim and telephone calls made to him, the jury was authorized to find that the victim was murdered between 1:10 p.m. and 2:00 p.m. Appellant was seen in the area wearing work clothes around noon and seen after 2:00 p.m. wearing shorts and sneakers. He was also seen carrying a trash bag that appeared to contain clothing. A pair of work boots, spattered with the victim's blood, was discovered in the men's restroom at the plumbing company; the jury was authorized to believe the two employees who identified the boots as belonging to appellant. Evidence was presented that the victim had been agitated because appellant had failed to pay for dental plates the victim had made for him.

Viewed in a light most favorable to support the verdict, we conclude that the evidence adduced at trial, while not overwhelming, was sufficient to enable a rational finder of fact to find appellant guilty beyond a reasonable doubt of the charged crimes. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Patricia Bagwell, appellant's wife, was called as a witness by the State and testified that the blood spattered boots did not belong to appellant and corroborated details of the statement appellant gave police, in which he claimed that after finding himself locked out of the room he rented from the victim, he reunited with his wife, climbed in the building through an open window, and discovered the victim already dead. The State questioned her whether appellant had threatened her life in letters he had written her since his arrest; she testified that he had not. The defense subsequently called appellant's brother, Bobby Kell, and on cross-examination the State sought to question him whether he had choked Bagwell in order to force her to

motion for new trial, filed September 27, 2004 and amended September 7, 2005, was denied September 9, 2005. A notice of appeal was filed September 21, 2005. The appeal was docketed November 8, 2005 and was submitted for decision on the briefs.

give him appellant's letters.[2] Appellant objected to the State's line of questioning on the basis, inter alia, that the jury would infer from the questions that Bobby Kell wanted the letters because they contained statements damaging to appellant, even though there was no evidence to support that inference. The trial court allowed the evidence after ruling that "based on the totality of the circumstances, it is fair to assume, or not assume, but for the inference to be drawn[,] that the evidence that hasn't been produced, if produced, could have proved damaging to the defense." In response to the State's questions, Bobby Kell acknowledged an arrest warrant had been issued for him because of the assault allegation but he denied assaulting Bagwell in any fashion for any reason. He testified that Bagwell voluntarily gave his family the letters and that he read several of them because of the poems appellant wrote. In rebuttal, the State called Bagwell's mother, who heard Bobby Kell and Bagwell exchange angry words and observed red marks on Bagwell's throat after the argument, but personally observed no assault and did not hear any particulars of the argument. She similarly lacked personal knowledge whether, at a different time when Bagwell gave Bobby Kell a shoebox containing letters, appellant's family was aware that an investigator from the district attorney's office had asked about the letters.

In two related enumerations of error, appellant challenges the admission of the evidence that Bobby Kell attacked Bagwell and the admission of evidence that the reason for the attack was to obtain the letters appellant wrote Bagwell because they contained damaging information.

(a) We recognize in Georgia that evidence of a defendant's attempt to influence or intimidate a witness can serve as circumstantial evidence of guilt. *Nguyen v. State*, 273 Ga. 389 (3) (543 SE2d 5) (2001); *Ballard v. State*, 268 Ga. 895, n. 4 (494 SE2d 644) (1998). Even where the defendant does not personally make the attempt to influence or intimidate a witness, "[i]t is a settled principle of law . . . that an attempt by a third person to influence a witness not to testify or to testify falsely is relevant and may be introduced into evidence in a criminal prosecution on the issue of the defendant's guilt where it is established that the attempt was made with the authorization of the accused." Annotation, "Admissibility in Criminal Case, on Issue of Defendant's Guilt, of Evidence that Third Person Has Attempted to

---

[2] At the time the State questioned Bobby Kell, neither the State nor the defense were in possession of any letters from appellant to his wife. Although the transcript reflects that during the trial appellant's family provided defense counsel with letters appellant wrote Bagwell, these letters were neither admitted into evidence at trial nor introduced into the record and no witness testified as to their contents. Thus, the record fails to support the State's assertion that these letters, or others not returned by appellant's family, contained incriminating information.

Influence a Witness Not to Testify or to Testify Falsely," 79 ALR3d 1156, 1162, § 3 [a] (1977). See also *Johnson v. State*, 255 Ga. App. 721, 722 (2) (566 SE2d 440) (2002) (State can show defendant's attempts to influence witnesses made through intermediaries but evidence regarding third party's attempts "must be linked to the defendant in order to be relevant to any material issues"). However, in this case the State introduced no evidence to establish that Bobby Kell's alleged attempt to influence Bagwell's testimony was made with the authorization of appellant. The mere family relationship between appellant and Bobby Kell is not enough, without more, to constitute adequate proof of the necessary authorization. 79 ALR3d, supra at 1160, § 2 [a]. See also id. at §§ 3 [c], 5.[3] Accordingly, the evidence of the attack was not admissible as circumstantial evidence of appellant's guilt.[4]

The State argues, however, that the evidence was admissible because it showed that Bagwell may have been influenced or intimidated by appellant's family into testifying falsely. The admissible evidence adduced at trial, however, fails to establish anything other than that Bobby Kell and Bagwell had an argument the summer before the trial and that he was charged with simple battery after the argument. There was no evidence to relate that argument with Bagwell's testimony. Accordingly, the evidence "was not relevant to the issue being tried," *Lewis v. State*, 279 Ga. 69, 74 (608 SE2d 602) (2005), and should not have been admitted.

(b) The State did not limit its use of Bobby Kell's alleged attack on Bagwell to raise questions whether her testimony was the result of coercion. The record establishes that the trial court authorized the admission of the evidence because it was "fair to assume" that Bobby Kell's attack on Bagwell was for the purpose of obtaining letters that contained incriminating statements by appellant. Consistent with the purpose for which the trial court allowed the evidence, the prosecutor argued in closing that

> You know, [Bobby Kell] told you that he didn't try to touch those letters, he didn't have any contact with [Bagwell]. Well, you know he was lying and you know he was lying based on his actions. This is the defendant's brother who is trying to help the defendant out. In addition to that, you can

---

[3] To the extent that language in *Winn v. State*, 272 Ga. 482 (2) (531 SE2d 717) (2000) can be read as holding admissible any credible evidence of an attempt to influence the testimony of a witness as to the issue of an accused's guilt, without regard to whether evidence establishes that the accused authorized the attempt, that language is disapproved.

[4] Likewise, there would be no relevancy at appellant's trial to the fact that Bobby Kell's alleged attack on Bagwell might be viewed as a violation of OCGA § 16-10-93 (intimidation of witness).

clearly see that [Bobby Kell] and his family had been tampering with evidence. The reason they did not want these letters to come in is because these letters would have been incriminating to his brother. . . .

The State had no letters containing incriminating statements from appellant; it had no admissible evidence that Bobby Kell had a fight with Bagwell; and it had no admissible evidence that Bobby Kell fought with Bagwell in order to obtain the letters. Under the totality of the circumstances established by the admissible evidence at trial, there was nothing to support the inference that appellant made damaging statements in his letters to his wife and that his brother assaulted her to prevent those letters from falling into the hands of the prosecution. This evidence had no relevancy to the issue whether appellant murdered the victim and it enabled the jury, as reinforced by the State's closing argument, to engage in the unsupported speculation that appellant made incriminating statements in the letters. Because there was no other legitimate reason for introducing this evidence, compare *Coleman v. State*, 278 Ga. 486 (3) (604 SE2d 151) (2004) (evidence of anonymous threat admissible to explain evasive answers by witness), we hold that the trial court erred by allowing the State to adduce it. See *Fields v. State*, 260 Ga. 331 (4) (393 SE2d 252) (1990).

(c) The admission of irrelevant evidence will not be deemed reversible error where the evidence of guilt is overwhelming and there is no substantial likelihood that the challenged evidence had any influence over the jury's decision. See generally *Bridges v. State*, 279 Ga. 351 (5) (613 SE2d 621) (2005). While the evidence adduced by the State in this case was sufficient to support appellant's convictions, see Division 1, supra, it cannot by any means be characterized as overwhelming. Although two disinterested witnesses testified that appellant wore the light tan work boots found spattered with the victim's blood, a third disinterested witness testified that appellant was wearing dark grey or black work boots on the day of the murder; the jury obviously credited the testimony of this third witness inasmuch as he was the only one to place appellant at the murder scene wearing working clothes before the victim was last seen alive and casual clothes, including sneakers, thereafter. No other physical evidence connected appellant with the murder. Regarding the remaining evidence relied upon by the State, the record reveals that the witnesses who testified appellant told them he had seen the victim's body prior to his 911 call to police (in which he claimed he had just discovered the body) both admitted the conversation occurred while they were using marijuana and/or alcohol; these witnesses claimed they remembered the date because it was a payday for one witness,

even though payroll records showed otherwise; they contradicted each other on critical matters, related details of the events that strained the 23 minute time window during which their conversation with appellant could have occurred, and insisted that an altercation between appellant and his wife took place on the evening of the murder, despite the improbability that the wife could have been on East Main Street in College Park at 9:30 p.m., as the witnesses testified, and also be assisted by law enforcement officers in Taliaferro County at 10:05 p.m. Finally, it is difficult to reconcile the State's claim that the jury could infer appellant's guilt circumstantially by his attempt to flee with the State's evidence from police officers that appellant stayed at the scene after calling 911; cooperated with police and answered their questions; waited there until released from the scene by the investigating detective; was told that he and his family could not return to the room he rented in the murder victim's office building or retrieve belongings from the room; and telephoned the investigating detective two or three times that evening regarding his plan to leave with his wife and young child to stay with relatives in Gainesville before he departed College Park.

Based on our review of the record, we cannot conclude that the evidence adduced by the State was so overwhelming that there is no substantial likelihood the jury's verdict was not influenced by the error in admitting irrelevant evidence that enabled the jury, as reinforced by the State's closing argument, to engage in the unsupported speculation that appellant made incriminating statements about the murder in letters to his wife. We therefore reverse the judgment entered on appellant's conviction and sentence.[5]

3. Addressing those matters that may occur upon retrial, we find meritless appellant's contention that testimony by Linda McBurnett regarding statements made to her by the victim regarding appellant's failure to pay for his dental plates were testimonial in nature and thus inadmissible under *Crawford v. Washington*, 541 U. S. 36 (124 SC 1354, 158 LE2d 177) (2004). See generally *Pitts v. State*, 280 Ga. 288 (627 SE2d 17) (2006). The evidence presented by the State regarding the relationship between McBurnett and the victim was sufficient to authorize the admission of the testimony under the

---

[5] The transcript reveals that when Bobby Kell initially testified he could not recall the incident with Bagwell, the State showed him the police report of the incident and explained its use over the defense's impeachment objection as a means of "refreshing [his] recollection." We note that it is not proper to use a report prepared by another to refresh a witness's recollection where the witness has no personal knowledge of the correctness of the report. See *Mincey v. State*, 257 Ga. 500 (6) (360 SE2d 578) (1987); *Sweat v. State*, 203 Ga. App. 290 (3) (416 SE2d 845) (1992). See generally OCGA § 24-9-69.

necessity exception to the hearsay rule. See generally *Chapel v. State*, 270 Ga. 151, 155 (4) (510 SE2d 802) (1998).

4. Upon retrial, we agree with appellant that hearsay evidence regarding statements made by appellant's wife to neighbors should not be admitted unless the State establishes the evidence comes within a firmly rooted exception to the hearsay rule. See generally OCGA § 24-3-1 et seq. Furthermore, upon retrial should the State present no further evidence of appellant's alleged "flight" than that set forth above, no attempt to flee will have been shown from which an inference of a consciousness of appellant's guilt might be drawn and thus testimony by neighbors regarding an alleged incident between appellant and his wife as they were departing for Gainesville would not be admissible as relevant to the issue of flight. See generally *Duke v. State*, 256 Ga. 671 (2) (c) (352 SE2d 561) (1987).

*Judgment reversed. All the Justices concur.*

DECIDED JUNE 26, 2006.

*Zell & Zell, Rodney S. Zell*, for appellant.

*Paul L. Howard, Jr.*, District Attorney, *Christopher M. Quinn, Bettieanne C. Hart*, Assistant District Attorneys, *Thurbert E. Baker*, Attorney General, *Laura D'Ann Dyes*, Assistant Attorney General, for appellee.