303 Ga. 810
FINAL COPY

S18A0426.  PALMER v. THE STATE.

GRANT, Justice.

Appellant Qutravius Palmer and his co-defendant Zion Wainwright were convicted of murder and other crimes in connection with the December 2013 shooting death of Xavier Arnold.  On appeal, Palmer argues that the trial court erred by failing to order an unprompted evaluation of his competency to stand trial and by denying his motion to sever the co-defendants' trials.  He also asserts that his trial counsel provided ineffective assistance.  Finding no error, we affirm.[1]

---

[1]  The murder was committed on December 26, 2013.  On March 20, 2014, Palmer and Wainwright were indicted by a DeKalb County grand jury for malice murder, felony murder predicated on criminal attempt to commit armed robbery, felony murder predicated on aggravated assault, criminal attempt to commit armed robbery, two counts of armed robbery, three counts of aggravated assault, and three counts of possession of a firearm during the commission of a felony.  At the conclusion of a joint trial held from May 11-19, 2015, a jury found Palmer not guilty of malice murder, but guilty of all remaining counts; Wainwright was found guilty of all counts.  The trial court sentenced Palmer to three consecutive life sentences for felony murder and both armed robbery counts, twenty years concurrent for aggravated assault, and five years each, running consecutively, for the firearm counts; the remaining counts were merged for sentencing.  Palmer filed a timely motion for new trial on May 27, 2015, which was subsequently amended twice through new counsel.  Following hearings on the motion, it was denied as amended on July 26, 2017.  Palmer filed his notice

## I.

Viewed in the light most favorable to the jury's verdict, the evidence at trial showed that on December 26, 2013, Xavier Arnold and his girlfriend Xenia Aimes, both art students, decided to drive to the Kirkwood neighborhood of Atlanta to take pictures of graffiti near a bike path. They picked up their friend Ibrahim Sanusi on the way, and arrived at the site in Kirkwood around 4:45 p.m.

After the friends parked and began walking down the bike path, they noticed that two young men had begun to follow them, and stepped to the side of the path to let the men pass. Initially, the two men passed by, but when the group of friends tried to turn around and walk back toward their car, they were approached by Palmer's co-defendant Zion Wainwright, who was just 14 years old at the time. Wainwright rushed toward the friends and yelled in Arnold's face "What's up? Why are you acting so hard?" while Palmer stood behind him. Arnold replied that the group of friends was leaving and asked for Wainwright to "chill," but the confrontation continued. Wainwright pulled out a gun and pointed it at Arnold while Palmer grabbed Arnold under the arms, immobilizing him. Arnold fought back, and he and

of appeal on August 18, 2017. The appeal was docketed to the term of this Court beginning in December 2017 and was orally argued on March 5, 2018.

2

Palmer fell to the ground where the two wrestled as Arnold tried to escape. In the meantime, Wainwright pointed the gun at Aimes and Sanusi and told Sanusi to empty his pockets, which he did. Wainwright then shot Sanusi in the leg and pointed the gun at Arnold. Aimes ran in front of the gun, screaming, while Wainwright repeatedly yelled at her to move. After Wainwright pushed Aimes out of the way, Sanusi heard Palmer instruct Wainwright to "shoot him."[2] Wainwright complied, and shot Arnold in the back of the head as he began to stand up. Palmer then snatched Aimes's phone away from her, and the two men ran off together in the same direction. Neighbors who heard gunshots called 911. One neighbor actually saw the encounter from her porch and described it to police. Following the calls, Arnold was taken to Grady Hospital by ambulance but died shortly after his arrival.

During their investigation, the police learned that Aimes was not certain when asked to identify Palmer because he was wearing a hood throughout the incident,[3] but it appeared to her that the two men were

---

[2] Sanusi survived the gunshot wound to his leg but died before trial in an unrelated drowning accident. His statements were introduced through multiple close friends under a hearsay exception.

[3] Aimes picked Wainwright out of a photographic lineup, but was unable to do the same for Palmer.

working together as a "unit," with the older one in charge. A woman who was familiar with both defendants told law enforcement that she saw Palmer and Wainwright together near the bike path running from the direction of the crime scene shortly after the murder. She said that she heard Palmer ask Wainwright if Wainwright shot the victim, and Wainwright reply that he shot the victim because Palmer told him to.[4] She also identified Palmer from a photographic lineup as the person she saw running from the murder scene with Wainwright.

A few days after the murder, Palmer showed up at his neighbor's apartment in the morning before she left for work, repeatedly banging on the door until she answered. Palmer appeared frantic and asked to use the phone. He did so, and then looked up a news article about the murder online. He confessed to the neighbor that he was running from the police, that he had been walking with Wainwright (whom he referred to as his cousin) on the day of the murder, and that the two of them were involved in the murder.

Phone records confirmed that Palmer and Wainwright's cell phones were in the area of the murder at the time that it occurred, and that there was

---

[4] At trial, this witness recanted, testifying that Palmer's uncle threatened her to make these statements to police in order to inculpate Wainwright as the gunman because the police "only care[d] about who was shooting."

a phone call between the two shortly after the murder. Palmer, however, terminated his phone line the next day.

Although Palmer has not challenged the sufficiency of the evidence supporting his convictions, we have independently examined the record according to our usual practice in murder cases, and we conclude that the evidence admitted at trial was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Palmer was guilty of the crimes of which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307, 318-319 (99 SCt 2781, 61 LE2d 560) (1979).

## II.

Palmer contends that the trial court erred in going forward with his trial because doubts existed regarding his competency to stand trial. We disagree.

On July 18, 2014, about ten months prior to trial, Palmer filed a plea of mental incompetency to stand trial and a motion for psychiatric evaluation. Palmer's motion noted that he had been assaulted in jail and had become increasingly withdrawn and unwilling to communicate with counsel, and that he had made statements to counsel regarding his belief that somebody was "switching his spirit." The trial court ordered a mental evaluation, and

Palmer was evaluated by a psychologist with the Georgia Department of Behavioral Health and Developmental Disabilities.

The evaluating psychologist was not convinced. She found that Palmer's "description of seeing things and hearing things during this evaluation was not consistent with descriptions or symptoms of a true psychotic disorder," and that "Palmer exhibited no symptoms of mental illness during this evaluation." The psychologist identified "no symptoms of a psychotic disorder or mental condition that negatively influenced his cognition or ability to relate to me during this evaluation," and concluded that there was "no reason he should not be able to work with his attorney or meaningfully participate in his defense." The psychologist ultimately advised that Palmer was competent to stand trial because he "was able to demonstrate functional capacity with respect to the legal proceedings[,] . . . understood the nature and object of the proceedings against him, [and] could discuss his charge and demonstrate an understanding of general courtroom procedure."

The evaluation was performed and submitted during September of 2014, and the court found Palmer competent to stand trial based on the psychologist's findings. On appeal, however, Palmer argues that the court

should have ordered a new competency evaluation, sua sponte, based on his subsequent behavior during trial. Palmer points to several instances when he tried to communicate directly with the trial court or appeared confused about the trial process. But in denying Palmer's motion for new trial on this ground, the court found that in addition to the pre-trial evaluation determining that Palmer was competent to stand trial, "during the trial neither Defendant's behavior nor his demeanor was such to raise a bona fide doubt regarding his competence. There was no evidence that Defendant did not understand the proceedings, appreciate their significance, or rationally aid his attorney in his defense."

We see no error. "A trial court has the sua sponte duty to inquire into a defendant's competency only when information 'becomes known to it, prior to or at the time of the trial, sufficient to raise a bona fide doubt regarding the defendant's competence.'" *Biggs v. State*, 281 Ga. 627, 629-630 (642 SE2d 74) (2007) (quoting *Traylor v. State*, 280 Ga. 400, 404 (627 SE2d 594) (2006)). The need for a competency evaluation depends on

> whether the trial court received information which, objectively
>
> considered, should reasonably have raised a doubt about the
>
> defendant's competency and alerted the trial court to the

7

possibility that the defendant could neither understand the proceedings, appreciate their significance, nor rationally aid his attorney in his defense.

*Traylor*, 280 Ga. at 404. In analyzing this issue, "the appellate court must focus on any evidence of the defendant's irrational behavior, the defendant's demeanor at trial, and any prior medical opinion regarding the defendant's competence to stand trial." Id.

In *Traylor*, we found that the defendant's inconsistent responses to the trial court regarding his decision to testify, as well as the court's directions to the defendant to consult with his attorney, failed to show the type of irrational behavior or unusual demeanor that would require the trial court to make further inquiry regarding competency. Id. at 404-405. Likewise, neither Palmer's (arguably confused) statements to the trial court, nor the fact that the court had to instruct him to communicate through his attorney, constituted irrational behavior or unusual demeanor sufficient to require the court to make further inquiry regarding his competency. Indeed, the record shows that although Palmer had some apparent confusion about his decision to testify, both the trial court and his attorney provided him with further

explanation on the issue. The record also shows that Palmer himself affirmed that he understood his rights.  See id.

In *Biggs*, we found that trial counsel's testimony that the defendant showed no signs of incompetency during trial, understood the proceedings against him, assisted with the development and presentation of his case, and coherently articulated his defense supported the trial court's denial of the defendant's claim of incompetency to stand trial.  281 Ga. at 631.  So too here.  At the motion for new trial hearing, Palmer's trial counsel testified that Palmer communicated with him throughout the case, that they had meaningful conversations about the case in which Palmer seemed to understand what counsel told him, that Palmer understood the trial court's inquiries regarding his decision whether to testify, that Palmer was able to assist counsel in his defense, and that counsel was satisfied that Palmer was competent at the time of trial.  This testimony is further indication that no circumstances existed that would have raised a bona fide doubt with the trial court regarding Palmer's competence.

Also, as in *Traylor*, Palmer provided no "medical opinion regarding his competence which would have caused the trial court to make further inquiry about it." *Traylor*, 280 Ga. at 405.  Even at this stage, Palmer has provided

no additional evidence establishing his alleged incompetency to stand trial. Because Palmer has failed to show the type of behavior or demeanor at trial that would reasonably raise a bona fide question about his competence, and because the only medical opinion in evidence indicates that Palmer was competent to stand trial, Palmer's competency argument fails.

III.

Palmer next contends that the trial court erred in denying his motion to sever his trial from Wainwright's. But we see no error.

When two or more defendants are jointly indicted for non-capital offenses, "such defendants may be tried jointly or separately in the discretion of the trial court." OCGA § 17-8-4 (a). The trial court's discretion to grant or deny a motion for severance is "broad." *Herbert v. State*, 288 Ga. 843, 845 (708 SE2d 260) (2011). "In ruling on a severance motion, the court should consider: (1) the likelihood of confusion of the evidence and law; (2) the possibility that evidence against one defendant may be considered against the other defendant; and (3) the presence or absence of antagonistic defenses." Id. "'[T]he burden is on the defendant requesting the severance to do more than raise the possibility that a separate trial would give him a better chance of acquittal. He must make a clear showing that a joint trial would lead to

prejudice and a consequent denial of due process.'" *Marquez v. State*, 298 Ga. 448, 449 (782 SE2d 648) (2016) (quoting *Thomas v. State*, 293 Ga. 829, 830-831 (750 SE2d 297) (2013)). And the mere presence of antagonistic defenses is insufficient to require severance in a non-death penalty case; instead, the defendant must show that "considering these antagonistic defenses, a joint trial was so prejudicial as to amount to a denial of his right to due process." Id. at 450; *Hendrix v. State*, 284 Ga. 420, 422 (667 SE2d 597) (2008).

Palmer has made no such showing. In this case, the law applicable to the two defendants was substantially the same, all of the evidence presented at trial was admissible against both defendants, and there was minimal risk of the jury being confused or of evidence being improperly considered against either defendant. See *Herbert*, 288 Ga. at 845; *Ballard v. State*, 297 Ga. 248, 255 (773 SE2d 254) (2015). It is true that Palmer's defense was that he simply was not the person who committed the crimes with Wainwright, while Wainwright's counsel argued that Palmer pressured Wainwright into robbing the victims and that Wainwright shot Arnold in defense of Palmer during the ensuing physical altercation. But as we have already pointed out, the presence of these antagonistic defenses alone did not require severance. In

case after case where co-defendants acted in concert, we have found that severance was not required simply because the defendant argued about identity or the co-defendant blamed—or even put forth evidence against—the defendant. See, e.g., *Barge v. State*, 294 Ga. 567, 571 (755 SE2d 166) (2014) (co-defendant's introduction of video showing defendant refer to himself as "Little Yo" after defendant denied that was his nickname did not require severance where other evidence confirmed defendant's identity); *Metz v. State*, 284 Ga. 614, 616 (669 SE2d 121) (2008) (co-defendants blaming each other for stabbing victim did not require severance), overruled on other grounds by *State v. Kelly*, 290 Ga. 29 (718 SE2d 232) (2011); *Loren v. State*, 268 Ga. 792, 795 (493 SE2d 175) (1997) (co-defendants blaming each other for fatally injuring victim, and co-defendant's admission of evidence implicating defendant did not require severance).

Palmer has not shown any denial of his due process rights, much less one that could have been avoided by severance of the co-defendants' trial, and there was strong evidence at trial showing that Palmer and Wainwright acted together in the robbery and in killing the victim. Palmer has not shown, therefore, that the trial court abused its discretion in denying his motion to sever or that he was prejudiced by that denial.

IV.

Palmer also contends that his trial counsel was ineffective, first for failing to adequately investigate Palmer's competency, and second for failing to object to a witness's testimony or to the State's asserted bolstering of her testimony. He is incorrect.

To prevail on an ineffective assistance of counsel claim, a defendant must show that his counsel's performance was professionally deficient and that such deficient performance resulted in prejudice to the defendant. *Strickland v. Washington*, 466 U. S. 668, 687-695 (104 SCt 2052, 80 LE2d 674) (1984); *Wesley v. State*, 286 Ga. 355, 356 (689 SE2d 280) (2010). To show deficient performance, Palmer must demonstrate that his attorney "performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms." *Romer v. State*, 293 Ga. 339, 344 (745 SE2d 637) (2013); see also *Strickland*, 466 U. S. at 687-688. To show prejudice, Palmer must establish a reasonable probability that, in the absence of counsel's deficient performance, the result of the trial would have been different. *Strickland*, 466 U. S. at 694. If either *Strickland* prong is not met, this Court need not examine the other prong. See *Hendrix v. State*, 298 Ga. 60, 61-62 (779 SE2d 322) (2015).

First, regarding Palmer's contention that his trial counsel was ineffective for failing to adequately investigate Palmer's competency, it was Palmer's own counsel who filed his plea of mental incompetency to stand trial and motion for psychiatric evaluation. And although Palmer's trial counsel was "a little bit surprised" that the psychologist determined that Palmer was competent, he also testified that Palmer's condition actually continued to improve, and that he "was satisfied, at least at the time when [they] went to trial, that he was competent to stand trial." Moreover, Palmer has still presented no evidence of any medical opinion that he was incompetent to stand trial. Under these circumstances Palmer cannot show deficiency, so his claim fails.

Regarding Palmer's second contention, that his trial counsel was ineffective for failing to object to a witness's testimony that she received threats from Palmer's family or to the State's alleged improper bolstering of that testimony, we also see no error. The testimony was plainly permitted and was not improperly bolstered.

"[E]vidence of a defendant's attempt to influence or intimidate a witness can serve as circumstantial evidence of guilt." *Kell v. State*, 280 Ga. 669, 671 (631 SE2d 679) (2006). Likewise, "an attempt by a third person to

14

influence a witness not to testify or to testify falsely" is also admissible as circumstantial evidence of guilt "where it is established that the attempt was made with the authorization of the accused." Id. (citation and punctuation omitted). Moreover, even when evidence of a threat to a witness is not connected to the defendant, the trial court still has discretion to admit evidence of the threat if it is "relevant to explain the witness's reluctant conduct on the witness stand." *Foster v. State*, 294 Ga. 383, 385 (754 SE2d 33) (2014) (citation and punctuation omitted).

Here, the witness's testimony included statements that Palmer's uncle had threatened her.[5] Specifically, she testified that Palmer's uncle pressured her to tell police that she had overheard Wainwright telling Palmer that he shot the victim at Palmer's direction "because they only care about who was shooting." The uncle also encouraged her not to come to court to testify at trial and said that if Palmer "go[es] down, me and my family will, too." The witness testified that to her "knowledge and understanding," Palmer's uncle "was working on behalf of [Palmer]," likely because Palmer had told his uncle that she was the only person who knew about his involvement in the

---

[5] There was also equivocal testimony that the uncle's son may have made a veiled threat.

killing. This testimony plainly connected the threats to Palmer as the person who authorized them.

Moreover, when this witness was first called to testify, she said that she did not want to testify, and the trial court found her in contempt for refusing to do so. She was then brought back to testify the following day, at which point she continued to refuse to answer the prosecutor's questions until the court permitted the State to cross-examine her as a hostile witness. At a minimum, then, it was within the trial court's discretion to admit the testimony regarding the threats as relevant to explain the witness's reluctance to testify. Accordingly, Palmer's counsel was not constitutionally deficient for failing to object to the threat testimony. See *Moss v. State*, 298 Ga. 613, 617 (783 SE2d 652) (2016) ("[T]he failure to make a meritless motion or objection does not provide a basis upon which to find ineffective assistance of counsel.") (citation and punctuation omitted).

Regarding Palmer's "bolstering" contention, he complains that the prosecutor asked the same witness on redirect examination whether the State "advise[d] you that we were concerned for your safety and if we could help you in some way," to which she replied, "Yes." Palmer argues that this was

improper bolstering and that his trial counsel was ineffective for failing to object to it. We disagree.

To begin, the trial court had already permitted the State to question this witness as a hostile witness based on her unwillingness to testify. And the challenged testimony was elicited in response to the defense's attack against the witness's truthfulness about the threats on cross-examination. The State was permitted to rehabilitate a witness after her credibility had been attacked with relevant testimony to explain her recantation. See *Brown v. State*, 302 Ga. 454, 459-461 (807 SE2d 369) (2017); *Fox v. State*, 289 Ga. 34, 38 (709 SE2d 202) (2011). An objection for improper bolstering, therefore, would have been meritless, and Palmer's trial counsel was not deficient in this respect. See *Moss*, 298 Ga. at 617. In addition, Palmer has not shown how this alleged deficiency prejudiced him given the strong evidence against him.

Accordingly, Palmer's claims of ineffective assistance of trial counsel fail.

Judgment affirmed. All the Justices concur.

Decided May 21, 2018 — Reconsideration denied June 18, 2018.

Murder. DeKalb Superior Court. Before Judge Hunter.

Rachel M. Kaufman, for appellant.

Paul L. Howard, Jr., District Attorney, Lyndsey H. Rudder, Arthur C. Walton, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Elizabeth H. Brock, Assistant Attorney General, for appellee.