**SECOND DIVISION**
**MILLER, P. J.,**
**MERCIER, J., SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**February 12, 2021**

# In the Court of Appeals of Georgia

A20A1635. BROADWATER v. THE STATE.

MILLER, Presiding Judge.

A Richmond County jury found Javarice Broadwater guilty of armed robbery, kidnapping, and possession of a firearm during the commission of a crime, and the trial court sentenced him to life imprisonment with a consecutive five-year sentence. Broadwater appeals from the denial of his motion for new trial, arguing that (1) the trial court plainly erred by admitting evidence of threats without first establishing that he made the threats; (2) the trial court erred in admitting similar transaction evidence; (3) the trial court erred in admitting witness identification evidence because it was impermissibly suggestive; (4) the trial court erred in allowing the prosecutor to ask him why the State's witness would lie; and (5) that the cumulative effect of all the errors mandates a new trial. For the reasons that follow, we affirm.

Viewing the evidence in the light most favorable to the jury's verdicts,[1] the evidence shows that in 2011, Lewis Rouse was a cashier at a BP gas station in Richmond County. On the evening of January 6, 2011, Rouse was getting ready to close the gas station for the night when he noticed someone sitting inside a car that was parked in the parking lot away from the gas station's window. At approximately 10:25 p.m. that same evening, a man entered the store and attempted to purchase a bag of potato chips. As Rouse rang up the item, the man pulled out a black semi-automatic firearm. The man then shoved the firearm into Rouse's chest, placed a bag on the counter, and told Rouse, "You know what to do." Rouse then took money out of the cash registers and put it inside the bag. The man also demanded money from the safe, but Rouse was unable to retrieve money from the safe. The man then took Rouse at gunpoint from behind the counter to the back office and asked Rouse for the store's yellow envelopes and lottery tickets. The man took the lottery tickets, ordered Rouse to stay in the office, and exited the store towards the area where Rouse had

---

[1] *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

noticed the car parked earlier that night.[2] Rouse then called the police and they arrived on the scene minutes later.

Three days prior to the BP gas station robbery, Shamoneeka Clark was working as a cashier at a Shell gas station in McDuffie County, when a man came into the store at approximately at 9:45 p.m. and robbed her at gunpoint.[3] The following night, also in McDuffie County, Quintessia Lee was working at a Chevron gas station when a man entered her store at approximately 11 p.m., pointed a gun at her, and robbed her at gunpoint.[4] . An agent from the Georgia Bureau of Investigation ("GBI") began an investigation into these two armed robberies,[5] collected surveillance video and photographic stills from the incidents, and sent the footage to television news stations. Laura Laughinghouse, Broadwater's former neighbor, saw the news reports

---

[2] The surveillance video from the gas station that captured the incident was entered into evidence and played for the jury.

[3] Clark identified Broadwater during trial as the man who robbed her gas station.

[4] Lee identified Broadwater during trial as the man who robbed her gas station.

[5] The two McDuffie County robbery offenses were admitted into evidence as other acts evidence under OCGA § 24-4-404 (b).

3

of the robbery at the Chevron gas station and recognized Broadwater as the man robbing the gas station and contacted the GBI.

The GBI agent then searched for information as to whether other crimes were committed in that county or the surrounding counties. On January 11, 2011, the agent was searching a television news station's website and came across the video of the BP robbery. After watching the video, he contacted the Richmond County Sheriff's office and gave them Broadwater's name.

An officer from the Richmond County Sheriff's Office compared the surveillance video with a known photograph of Broadwater and determined that Broadwater was the person on the surveillance video. The officer then compiled a photo line-up for Rouse, and Rouse identified Broadwater as the man who robbed his gas station. Laughinghouse was also provided with the footage from the BP gas station robbery and the Shell gas station robbery, and she identified Broadwater as the perpetrator of those offenses, and she also identified Broadwater at trial.

Broadwater was indicted for armed robbery (OCGA § 16-8-41), kidnapping (OCGA § 16-5-40), and possession of a firearm during the commission of a crime (OCGA § 16-11-106), all stemming from the BP gas station robbery. The jury

4

convicted Broadwater on all charges, and the trial court sentenced him to life imprisonment with a consecutive five-year sentence. Broadwater filed a motion for new trial, which the trial court denied after a hearing. This appeal followed.

1. First, Broadwater argues that the trial court erred in allowing a State's witness to testify about threatening messages she received from Broadwater's family member. We conclude that, although the trial court erred in permitting this testimony, Broadwater is not entitled to a new trial on this basis.

Broadwater concedes that this issue is not preserved for appellate review because he did not object to the testimony during trial. Accordingly, we review this issue for plain error only. See *State v. Parks*, 350 Ga. App. 799, 808-809 (1) (830 SE2d 284) (2019) ("[W]e review unobjected-to evidentiary rulings for plain error.").

> [T]o prevail on this enumeration of error, [Broadwater] must show that: (1) there was an error that he did not affirmatively waive; (2) the error was obvious; (3) the error affected his substantial rights, which means that he must demonstrate that the error likely affected the outcome of the proceedings; and (4) the error seriously affected the fairness, integrity, or public reputation of judicial proceedings.

*Lofton v. State*, 309 Ga. 349, 358-359 (4) (846 SE2d 57) (2020).

> In Georgia, evidence of a defendant's attempt to influence or intimidate a witness can serve as circumstantial evidence of guilt. Evidence of an

5

> attempt made by a third person to influence a witness not to testify or to testify falsely is relevant and may be introduced into evidence in a criminal prosecution on the issue of the defendant's guilt where it is established that the attempt was made with the authorization of the accused. However, evidence of a threat or attempt to influence a witness made by a third party must be linked to the defendant in order to be relevant to any material issues.

(Citations and punctuation omitted.) *Wade v. State*, 304 Ga. 5, 12 (5) (815 SE2d 875) (2018). Additionally, "[a] mere family relationship . . . is not enough, without more, to constitute adequate proof for the admission of this evidence." *Kell v. State*, 280 Ga. 669, 672 (2) (a) (631 SE2d 679) (2006).

Here, Laughinghouse testified that she had received text messages and Facebook messages from Broadwater's uncle threatening her not to testify against Broadwater and that Broadwater's uncle had driven past her house on several occasions.

We conclude that it was error for this testimony to be admitted at trial. Although the threats were made by Broadwater's uncle, the State presented no evidence that Broadwater made any threats against Laughinghouse or that he directed another person to send the threatening messages. Nor did the State present any circumstantial evidence for an inference to be made that the threats were made at

6

Broadwater's instigation. Thus, in the absence of evidence permitting an inference to be drawn that the threats were instigated or authorized by Broadwater, Laughinghouse's testimony regarding threats she received was inadmissible. See *Kell*, supra, 280 Ga. at 672 (2) (a) (holding that evidence that the defendant's brother attacked the defendant's wife to retrieve incriminating evidence was inadmissible where there was no evidence that the attack was made with the defendant's authorization). Compare with *Wade*, supra, 304 Ga. at 11-12 (5) (holding that a postcard received by a witness during the trial proceedings that threatened the witness' family was admissible, where the postcard referred to the witness by his nickname, which the defendant knew, and the postcard referenced the witness having received an x-ray, which the defendant would have known about since the witness and the defendant had been confined to the medical floor at the jail).

Nevertheless, we conclude that Broadwater has not made the necessary affirmative showing to prevail on plain error review. Rouse, the BP gas station clerk, testified that a man entered the gas station store, brandished a firearm, and demanded that money be taken from the cash registers. Rouse further testified that the man took him at gunpoint from the cash register to the back office. Rouse identified Broadwater in a photo line-up and during trial as the man who robbed the store. Laughinghouse,

7

Broadwater's neighbor, also identified Broadwater on the BP gas station's surveillance video and during trial as the perpetrator of the offenses. A law enforcement officer testified that he compared the surveillance footage with a photograph of Broadwater and determined that Broadwater was individual robbing the gas station. Moreover, the surveillance video from the robbery was entered into evidence and played for the jury, which allowed the jury to make its own conclusion on the identity of the perpetrator. In light of the overwhelming evidence of Broadwater's guilt, it cannot be said that the error in the admission of Laughinghouse's testimony concerning threats she received from Broadwater's uncle likely affected the outcome below. See *Belcher v. State*, 344 Ga. App. 729, 743-744 (2) (c) (812 SE2d 51) (2018) (holding that the defendant failed to show plain error from the improper admission of a witness' testimony about threats received from the co-defendant's father, where, in light of the overwhelming evidence of guilt, the defendant could not show that the error likely affected the outcome of his trial proceedings). Accordingly, Broadwater has failed to show reversible error from the trial court's admission of Laughinghouse's testimony and he is therefore not entitled to relief on this claim.

8

2. Next, Broadwater argues that the trial court abused its discretion when it admitted evidence pertaining to the two other robberies into evidence at trial. We discern no abuse of discretion by the trial court in this regard.

"A trial court's decision to admit other acts evidence will be overturned only where there is a clear abuse of discretion." (Citation omitted.) *Flowers v. State*, 307 Ga. 618, 621 (2) (837 SE2d 824) (2020).

Under OCGA § 24-4-404 (b),

[e]vidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident[.]

*Cordova v. State*, 351 Ga. App. 652, 659 (3) (832 SE2d 465) (2019).

[E]xtrinsic act evidence may be admitted if a three-part is met: (1) the evidence is relevant to an issue in the case other than the defendant's character, (2) the probative value is not substantially outweighed by the danger of unfair prejudice as required by Rule 403, and (3) there is sufficient proof for a jury to find by a preponderance of the evidence that the defendant committed the prior act.

(Footnote omitted.) Id. Here, in a pre-trial order, the trial court ruled that the evidence of the two other robberies was admissible to show modus operandi and identity. In its limiting instructions and its final instructions to the jury, however, the trial court instructed the jury that the crimes could be considered to show Broadwater's intent, knowledge, identity, motive, or plan. Therefore, we will consider whether the trial court erred in admitting evidence of the two other robberies to show Broadwater's intent, knowledge, identity, motive, or plan. See *State v. Jones*, 297 Ga. 156, 160 (2) n.3 (773 SE2d 170) (2015) (reviewing whether the trial court properly admitted defendant's prior DUI conviction under Rule 404 (b) for purposes of establishing whether the State met its burden of proof, where the trial court admitted the prior crime to show the defendant's intent but it instead instructed the jury that the prior crime could be considered to determine whether the State met its burden of proof).

(a) As to intent, under the first prong of the Rule 404 (b) admissibility test,

a defendant who enters a not guilty plea makes intent a material issue which imposes a substantial burden on the government to prove intent, which it may prove by qualifying Rule 404 (b) evidence absent affirmative steps by the defendant to remove intent as an issue. Where the extrinsic offense is offered to prove intent, its relevance is determined by comparing the defendant's state of mind in perpetrating both the extrinsic and charged offenses. Thus, where the state of mind

10

required for the charged and extrinsic offenses is the same, the first prong of the Rule 404 (b) test is satisfied.

(Footnote omitted.) *Cordova*, supra, 351 Ga. App. at 660 (3) (a).

In this case, Broadwater pleaded not guilty to the offenses, and he did not take any affirmative steps to remove intent as an issue in the case.[6] Also, the extrinsic offense and one of the charged offenses both involve armed robbery. Therefore, "the same state of mind is required for both offenses, and [thus] the first prong of [the] Rule 404 (b) [test] is satisfied." *Jernigan v. State*, ___ Ga. App. ___ (2) (a) (i) (848 SE2d 707) (2020) (holding that prior armed robbery offense satisfied the first prong of the Rule 404 (b) test because the prior armed robbery and the charged armed robbery were the same offense and therefore had the same required mental state).

(b) As to the second prong,

---

[6] To the extent that Broadwater argues that he removed the issue of intent from the case because he did not dispute that someone had robbed the gas station, both this Court and the Eleventh Circuit have previously considered and flatly rejected such claims. See, e.g., *Silvey v. State*, 335 Ga. App. 383, 387 (1) (a) (780 SE2d 708) (2015) ("Although Silvey argues that his defense denying that he was involved in the burglaries removed the element of intent from the case, the Eleventh Circuit has consistently rejected such an argument. . . . Thus, intent remained a material issue at trial.").

11

[t]he second part of the Rule 404 (b) analysis — which requires us to weigh the probative value of relevant evidence against its danger of unfair prejudice — is governed by Rule 403, which provides: Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

*Jernigan*, supra, ___ Ga. App. at ___ (2) (a) (ii). "Additionally, the Supreme Court of Georgia has explained that the Rule 403 analysis must be done on a case-by-case basis and requires a common sense assessment of all the circumstances surrounding the extrinsic act and the charged offense." (Footnote and punctuation omitted.) Id. "[I]n considering the probative value of evidence offered to prove intent, these circumstances include the prosecutorial need for the extrinsic evidence, the overall similarity between the extrinsic act and the charged offense, and the temporal remoteness of the other act." (Footnote and punctuation omitted.) Id. Additionally, "when other-acts evidence is introduced to prove intent as opposed to identity[,] a lesser degree of similarity between the charged crime and the extrinsic evidence is required." (Footnote and punctuation omitted.) Id.

Here, the two prior robberies were similar to the charged armed robbery in that both robberies involved Broadwater entering a gas station and demanding money

12

from the cashiers at gunpoint. Also, the two prior armed robberies were committed in a neighboring county within three days of the armed robbery in the instant case. Furthermore, the trial court gave limiting instructions to the jury instructing it that the evidence was admissible *only* as it concerned Broadwater's knowledge, intent, identity, motive, or plan for the offenses, and for no other purpose. In light of these facts, we determine that the second prong of the Rule 404 (b) test is satisfied.[7] See *Jernigan*, supra, ___ Ga. App. at ___ (2) (a) (ii) (holding that evidence pertaining to a prior armed robbery was admissible under the second prong of the Rule 404 (b) test where the prior offense was committed in a similar manner to the charged offense, the prior offense was not remote in time to the charged offense, and the trial court gave limiting instructions to the jury for its consideration of the prior offense).

(c) "Under the third prong of the test, there must be sufficient proof to enable a jury to find by a preponderance of the evidence that the defendant committed the other act(s) in question." (Citation and punctuation omitted.) *Silvey v. State*, 335 Ga. App. 383, 388 (1) (c) (780 SE2d 708) (2015). Here, Shamoneeka Clark testified that

---

[7] Broadwater's reliance on our decision in *Sloan v. State*, 351 Ga. App. 199 (830 SE2d 571) (2019), is misplaced. In that case, we determined that the evidence of two prior armed robberies was inadmissible because the prior crimes were not committed in a similar manner to the charged offenses and given the particular facts of the case, the prior crimes had no probative value. Id. at 209 (2) (e) (i).

she was working as a cashier at a Shell gas station when a man came in the store and robbed her at gunpoint. Quintessia Lee testified that she was working at a Chevron gas station when a man entered the store, pointed a gun at her, and robbed her store. Laughinghouse, Broadwater's former neighbor, testified that she reviewed the surveillance footage from the robberies. All three women identified Broadwater during trial as the man who robbed the gas station stores. "Based on the foregoing, there was sufficient proof for the jury to find by a preponderance of the evidence that [Broadwater] committed the prior act[s]." *Cordova*, supra, 351 Ga. App. at 661 (3) (c) (holding that the third prong of the Rule 404 (b) test was satisfied where the preponderance of the evidence showed that the defendant committed the prior offense).[8] Accordingly, Broadwater's claim that the trial court erred in admitting the two prior robberies into evidence at trial fails.

3. Broadwater further argues that the trial court erred in allowing the witnesses from the two prior robberies to identify him during trial because the identifications

---

[8] Because we determine that evidence of the prior robberies were admissible under Rule 404 (b) to show intent, we need not address whether the prior crimes were also admissible to show knowledge, identity, motive, or plan. See *Jernigan*, supra, ___ Ga. App. at ___ (2) (b) (declining to address whether the prior offense was admissible to show identity where we determined that the evidence was admissible to show the defendant's intent).

14

were impermissibly suggestive and that his constitutional rights were violated because he was "forced" to testify against himself when he was required to attend the similar transaction hearing and sit at the defendant's table. We disagree and conclude that the trial court did not err in these regards.

(a) As to Broadwater's claim that the witnesses' in-court identification was impermissibly suggestive because they failed to identify him in a pre-trial photo line-up, we have long held that "a pretrial identification is not required as a condition precedent to an in-court identification. The witness' failure to identify [the] defendant's photograph does not, therefore, preclude a subsequent identification either at the preliminary hearing or at the trial." (Citation omitted.) *Lowe v. State*, 136 Ga. App. 631, 633 (1) (222 SE2d 50) (1975).

Here, trial counsel argued below that Clark and Lee failed to identify Broadwater in a photo line-up with the police, but after appearing for the similar transaction hearing for the two robberies in McDuffie County, they both identified Broadwater as the man who robbed their gas stations.[9] Broadwater, however, does not identify any action by state officials that could be interpreted as them leading Clark

---

[9] To the extent that Broadwater alleges that Clark and Lee said that they were only able to identify him as the perpetrator because he was seated at the defendant's table, this assertion is unsupported by the record.

15

and Lee to an all but inevitable identification of Broadwater as the perpetrator. There is no evidence in the record that Clark and Lee were informed that Broadwater would be present at the similar transaction hearing and, although Broadwater was seated at the defendant's table with his counsel, there were other people who were present and sitting inside the courtroom during the hearing. Therefore, the record is devoid of evidence to support Broadwater's claim that Clark's and Lee's in-court identification of him was impermissibly suggestive. Therefore, the mere fact that Clark and Lee failed to identify Broadwater in a pre-trial photo line-up did not render their subsequent in-court identification of him inadmissible but was instead a matter of the weight and credibility to be determined by the jury.[10] Accordingly, this claim fails.

(b) As to Broadwater's claim that his constitutional right against self-incrimination was violated when he was forced to sit at the defendant's table during the similar transaction hearing, Broadwater concedes that this claim was not preserved for appellate review and argues that plain error review applies to this claim.

Broadwater's constitutional claim, however, is not one of the types of claims that can be raised for the first time on appeal for plain error review. See *State v.*

---

[10] For these reasons, Broadwater's reliance on the United States Supreme Court's decision in *Foster v. California*, 394 U. S. 440 (89 SCt 1127, 22 LE2d 402) (1969), is misplaced.

16

*Herrera-Bustamante*, 304 Ga. 259, 264 (2) (b) (818 SE2d 552) (2018) (concluding that the defendant's non-evidentiary constitutional claim that his right against self-incrimination was violated was not subject to plain error review and could not be raised for the first time on appeal). Even if plain error review could apply, as previously stated, the second prong of the plain error test requires a showing that the error was "clear and not open to reasonable dispute." (Citation omitted.) *McKinney v. State*, 307 Ga. 129, 134 (2) (834 SE2d 741) (2019). It is well settled, however, that "[a]n error cannot be plain where there is no controlling authority on point." (Citation omitted.) Id. at 134-135 (2) (a). Here, Broadwater does not identify any controlling authority supporting his claim that a defendant's constitutional right against self-incrimination is violated when he or she is sitting at the defense table at trial or at a pre-trial hearing. "Because there is no controlling authority supporting [Broadwater]'s argument, he has failed to show a clear error." *McKinney*, supra, 307 Ga. at 135. Accordingly, even if plain error review applies, Broadwater cannot show plain error, and therefore his claim fails.

4. Broadwater also argues that the trial court erred in allowing the prosecutor to question him as to why the State's witnesses would lie against him. We disagree

and conclude that Broadwater has failed to show that the trial court plainly erred in this regard.

Broadwater concedes that this issue was not preserved for appellate review because he failed to raise an objection during trial. We therefore review this claim for plain error. See *Parks*, supra, 350 Ga. App. at 808-809 (1) (reviewing unobjected-to evidentiary rulings for plain error).

Georgia courts have long held that "it is improper for counsel to ask one witness if another witness is lying, as a witness' veracity is a matter to be determined by the jury." (Footnote omitted.) *Tanksley v. State*, 248 Ga. App. 102, 104 (2) (545 SE2d 652) (2001). Indeed, the Supreme Court of Georgia has applied this principle under the current Evidence Code and has held that

> it is improper to ask a testifying witness whether another witness is lying. The Eleventh Circuit has held that it is often necessary to focus a witness on the differences and similarities between his testimony and that of another witness. This is permissible provided he is not asked to testify as to the veracity of the other witness.

(Citation, punctuation, and emphasis omitted.) *Jones v. State*, 299 Ga. 40, 43 (3) (785 SE2d 886) (2016).[11]

Here, during direct examination in his case-in-chief, Broadwater testified about the inaccuracies in the testimony of some of the State's witnesses, and he provided testimony about his whereabouts at the time of the robberies to support his defense that the State's witnesses identified the wrong person as the perpetrator of the offenses. The following exchange then occurred during cross-examination by the prosecutor:

> [PROSECUTOR]: You're sitting there earlier yesterday and today, when Louise Rouse, Laura Laughinghouse, Quintessia Lee, and Shamoneeka Clark, all of them identified you as the armed robber in all three of those armed robberies that they had seen before. They were able to identify you in court. Why would those people lie? Why would -- what -- what -- they have nothing to gain, do they? They have nothing to gain.
>
> [BROADWATER]: Your guess is as good as mine.

---

[11] To the extent that Broadwater argues that the Eleventh Circuit Court of Appeals has ruled that the State may *never* question a defendant as to whether a witness is lying, this claim is false. The Eleventh Circuit has held that although "asking a criminal defendant whether another witness is lying is improper, we do not foreclose the possibility that, in the circumstances of a particular case, a question about the truthfulness of another witness may in some cases be appropriate." *United States v. Schmitz*, 634 F3d 1247, 1270 (IV) (D) (11th Cir. 2011).

[PROSECUTOR]: They have absolutely nothing to gain, do they?

[BROADWATER]: I don't know.

Pretermitting whether the prosecutor's questions to Broadwater were error, we conclude that Broadwater has failed to make the necessary affirmative showing that he is entitled to reversal of his convictions. As recounted in Division 1, there was overwhelming evidence to establish Broadwater's guilt for the offenses such that Broadwater cannot show that the alleged error affected the outcome of the proceedings below. Therefore, in light of the overwhelming evidence of Broadwater's guilt, he cannot show any harm from the prosecutor's alleged error of questioning him regarding the veracity of the State's witnesses. See *Gipson v. State*, 332 Ga. App. 309, 316 (4) (772 SE2d 402) (2015) (holding that the defendant could not demonstrate plain error from the prosecutor's alleged improper questioning of him because he could not show that the error affected the outcome of the proceedings). Accordingly, Broadwater is not entitled to any relief on this basis.

5. Lastly, Broadwater argues that the cumulative effect of the errors warrants a new trial. We disagree. The Supreme Court of Georgia has held that, "at least where

20

errors by the court and counsel involve evidentiary issues, Georgia courts should consider collectively the prejudicial effect, if any, of trial court errors, along with the prejudice caused by any deficient performance of counsel." (Citation and punctuation omitted.) *Dobbins v. State*, 309 Ga. 163, 170 (5) (844 SE2d 814) (2020).

In this case, we have considered the cumulative effect of the error in Division 1 and the pretermitted error in Division 4 and conclude that "the cumulative prejudicial effect of any such errors does not require a new trial." (Citation omitted.) *Young v. State*, 309 Ga. 529, 542 (5) (847 SE2d 347) (2020). See also *Jenkins v. State*, 354 Ga. App. 674, 682 (5) (e) (839 SE2d 698) (2020) (rejecting the defendant's cumulative error claim where the alleged errors were insufficient to show a reasonable probability that the results of the trial would have been different in the absence of the alleged errors).

Accordingly, for the reasons provided above, we affirm the trial court's denial of Broadwater's motion for new trial.

*Judgment affirmed. Mercier, J., and Senior Appellate Judge Herbert E. Phipps, concur*.