In the Supreme Court of Georgia

Decided: November 3, 2014

S14A1103. SMITH v. THE STATE.

BENHAM, Justice.

Appellant Jill Adaire Smith appeals her convictions for malice murder and other related crimes regarding the October 22, 2010, death of her husband Mike Smith in a house fire.[1] For reasons set forth below, we now affirm.

1. Viewed in a light most favorable to the verdict, the evidence shows that on the night of the fire, Appellant invited co-defendant Peter Delaney over to her home. Before his arrival, appellant sent Delaney a text message, instructing him to buy three bottles of cheap red wine so that her husband would "just pass

[1]On March 14, 2011, a Forsyth County grand jury indicted appellant on charges of malice murder, felony murder, and arson in the first degree. Appellant, along with co-defendant Peter Delaney, was tried before a jury beginning on February 12, 2012, and, on February 28, the jury returned a guilty verdict against appellant on all charges. The jury acquitted Delaney in full. On February 29, 2012, the trial court sentenced appellant to life in prison for malice murder and twenty years to serve consecutively for arson in the first degree. The felony murder conviction was vacated as a matter of law. Appellant moved for a new trial on March 16, 2012, and the trial court denied the motion on September 27, 2012. Appellant obtained appointed appellate counsel in November 2012 and, through him, moved for an out-of-time appeal on December 12, 2012. The motion for out-of-time appeal was granted on March 5, 2013, and appellant timely filed a motion for new trial on March 13, 2013, which she amended on September 3, 2013. The trial court held a hearing on the motion for new trial as amended on October 16, 2013, and denied the motion on November 19, 2013. Appellant timely filed a notice of appeal on December 9, 2013, and the case was docketed to the April 2014 term of this Court. The case was orally argued on July 7, 2014.

the f**k out." Delaney arrived with the wine as requested at about 8:00 p.m. The three adults drank and socialized that evening, while appellant's minor son played video games upstairs in his room. At some point, appellant decided to put the victim to bed because he was intoxicated. She took him upstairs to the master bedroom where he shed his clothes next to the bed, lay down, and went to sleep. According to statements appellant made to police, the victim was in bed at 9:58 p.m. and, when appellant left the room, none of the candles in the room were burning. Appellant retreated downstairs and went into the garage to smoke a cigarette. According to statements Delaney made to police, he was asleep on the couch in the living room. Sometime later, Appellant's son yelled downstairs to appellant that he smelled smoke. Appellant went upstairs to her son's room to investigate and a few minutes later the smoke alarms went off. Appellant instructed her son to get out of the house and go across the street to a neighbor's house. Appellant went to the master bedroom and opened the door at which point she said she saw smoke and flames. She told police that she saw the victim or his silhouette in the doorway of the master bathroom, that she called out to him and that he responded to her. Stating she believed the victim was coming out behind her, appellant left the house through the garage. On her

2

way out of the house, she said she attempted to call 9-1-1 on the house phone, but it was not working. She said she gathered her purse to retrieve her cell phone out of it and used the cell phone to call 9-1-1 when she got outside the house. Appellant called 9-1-1 at approximately 10:49 p.m. Delaney told police that he awoke to appellant telling him there was a fire and he exited the house. When he got outside the house, he saw appellant and her son across the street in a neighbor's driveway.

When firefighters arrived at the scene, smoke and flames were shooting out of the windows of the master bedroom which was situated on the left side of the house above the garage. Firefighters reported that, although a lot of smoke and flames were emanating from the master bedroom, most of the actual fire was on the bed inside the room. The victim was located in the master bathroom in a "tornado position," and, although paramedics confirmed he was dead at the scene,[2] appellant was not told of his death until sometime later during her initial interview with police.

---

[2]The medical examiner testified at trial that the victim died of smoke inhalation and thermal burns covering 90% of his body.

At the scene, Delaney, who witnesses testified smelled of alcohol and appeared to be intoxicated, approached a deputy sheriff and told him that the victim had committed suicide. When the county fire investigator arrived on the scene, she spoke to Delaney who told her that he and appellant were having an affair, that appellant and the victim were getting a divorce, and that he believed the victim had committed suicide. Delaney also told several civilian witnesses at the scene that the victim had committed suicide. When the county fire investigator spoke to appellant at the scene, appellant told her that Delaney was a friend of the victim and that she was not divorcing her husband. Because of the conflicting statements made by appellant and Delaney, they were asked to leave the scene and go to the sheriff's department where they could be interviewed separately.

Appellant was interviewed by police on the night of the fire and approximately seven other times over the course of approximately three months. During those multiple interviews she made inconsistent statements about what transpired the night of the fire. However, she never admitted to setting the fire either accidentally or intentionally. Although she initially denied any affair or sexual relationship with Delaney, she eventually admitted to engaging in oral

4

sex with him. The evidence showed that Delaney presented authorities with text messages from appellant in which she led Delaney to believe she was in the process of divorcing the victim and that the finalization of the divorce was imminent. The State presented evidence that neither appellant nor the victim had filed for divorce in Forsyth County.

The county fire investigator testified that on the night of the fire, appellant did not appear as if she had been in a fire–there was no soot on her person or singeing of her hair. The county fire investigator testified that appellant's initial statement about the location of the fire inside the bedroom was inconsistent with some of the physical evidence. Upon investigation, the county fire investigator concluded that the fire primarily originated on the left side of the bed which was the victim's side of the bed. There were also floor fires inside the bedroom which caused several holes in the flooring a few feet in front of the bedroom doorway. Because the holes were not alongside seams in the floor and because there was a lack of access to oxygen given the layers of carpet, fiberglass insulation, and sheet rock in the flooring which separated the master bedroom from the underlying garage, both the county fire investigator and the insurance investigator testified they believed an accelerant was used to cause the floor

fires. In addition, the insurance fire investigator recovered a sample from near the left side of the bed, where most of the fire damage originated, which tested positive for gasoline. Both fire investigators ruled out an electrical fire. Based on appellant's statements that candles were in the room and that the victim sometimes lit candles and incense, both fire investigators considered the possibility of a fire set by burning candles, but found no evidence supporting that theory. Ultimately, both fire investigators ruled the fire as intentionally set and testified to such at trial.

In addition to the physical evidence, the State also presented evidence of possible motive. At trial, it was shown that appellant had lost her business a few months before the fire. There was evidence that appellant was the beneficiary of several insurance policies entitling her to receive over a half million dollars as a result of the victim's accidental death. The State showed that in one instance appellant forged a signature in an attempt to change the beneficiary designation to herself on a policy that was ultimately paid out to the victim's mother.

On appeal, appellant argues the evidence was insufficient to convict her of arson and murder because the State failed to "prove who started the fire" and

6

that any of the four individuals who were in the house on the night in question could have set the fire. Appellant specifically points to the candles, cigars, incense, matches, and lighters which were all available to cause an accidental fire, most likely at the hands of the victim. The jury heard such competing evidence, including testimony from appellant's fire investigation expert who opined that the fire started accidentally, and it was free to reject appellant's theory. See Lewis v. State, 283 Ga. 191 (1) (657 SE2d 854) (2008). The evidence, as summarized above, was sufficient to enable a rational trier of fact to find appellant guilty beyond a reasonable doubt of the crimes for which she was convicted. Jackson v. Virginia, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979); Sharpe v. State, 291 Ga. 148 (1) (728 SE2d 217) (2012).

2. Appellant requested a charge on the affirmative defense of accident and the trial court refused to give it. Trial counsel did not object at the time of the charge conference or after the jury had been charged by the trial court. Appellant now contends the trial court erred when it refused to give the charge and that counsel was ineffective for failing to object. There was no error, however, because an affirmative defense of accident generally requires an admission by the defendant that she committed the act that caused the victim's

7

death.  See  Mathis v. State, 293 Ga. 35 (3) (743 SE2d 393) (2013); Mangrum

v. State, 285 Ga. 676 (6) (681 SE2d 130) (2009).  Here, appellant never

admitted to starting the fire, but rather advanced the theory that *the victim*

accidentally set the fire.  Thus, appellant was not entitled to a charge on the

affirmative defense of accident.  Id.

We note further that the trial court gave the following instruction on the

State's burden of proof and the presumption of accident in cases involving

arson:

> The burden rests upon the State to prove beyond a reasonable doubt
> that the building described in the indictment was damaged by fire,
> the burning was caused by criminal act and the accused was the
> person doing the burning or was a party to it.  The law presumes
> every fire to be accidental or naturally caused  until the State shall
> prove beyond a reasonable doubt that such fire was a result of a
> criminal act.  The criminal act will not be presumed and the burden
> is put on the State to overcome the presumption that the fire was
> accidentally or naturally caused by proof of the criminal act beyond
> a reasonable doubt.

This instruction and the jury charges as a whole were sufficient to encompass

the jury's consideration of appellant's theory that the victim accidentally caused

the fire and there was no reason for the trial court to give any additional charge

concerning accident.  Inasmuch as the trial court did not err when it refused to

give a charge on the affirmative defense of accident, counsel did not render ineffective assistance by failing to lodge an objection that lacked merit. Currier v. State, 294 Ga. 392 (2) (754 SE2d 17) (2014). Accordingly, this enumeration of error cannot be sustained.

3. Appellant alleges she is entitled to relief for a Bruton[3] violation regarding evidence of a statement made by Delaney which possibly could have inculpated appellant. During the State's case-in-chief, the lead investigator for the sheriff's department  testified about his interviews with appellant and Delaney on the night of the fire. During those interviews, appellant and Delaney were in separate interview rooms and the investigator shuttled between the two rooms. The investigator testified that when he informed appellant that her husband had died, she began screaming. He then left the room to obtain the chaplain and while the chaplain was with appellant, he went back in the room where Delaney was to speak with him. At trial the following colloquy occurred between the prosecutor and the investigator:

> Q. All right. And when you went in there, what, if anything, did [Delaney] say to you?

---

[3] Bruton v. United States, 391 U.S. 123 (88 SCt 1620, 20 LE2d 476) (1968).

9

A.  I walked in the room and [Delaney] said did she conf–

At that point, appellant objected.  After a bench conference, the jury was excused and the State made a proffer showing that upon hearing appellant screaming, Delaney asked the investigator whether appellant had confessed. The trial court heard the parties' arguments about the admissibility of Delaney's statement and sustained appellant's objection.  The jury returned and the prosecutor continued to question the investigator without any further reference to the statement.  Appellant did not request and the trial court did not give any curative or limiting instruction.  Appellant also did not request a mistrial.  At the motion for new trial hearing, counsel testified that he made a conscious decision not to request a curative/limiting instruction or move for a mistrial because he did not want to draw any further attention to the matter in front of the jury.

In this situation, we cannot say there was any reversible error.  The trial court sustained appellant's objection and was not required to take any further action absent a request from counsel. See Junior v. State, 282 Ga. 689 (5) (653 SE2d 481) (2007); Carr v. State, 259 Ga. 318 (2) (380 SE2d 700) (1989). Counsel, in turn, made a strategic decision not to pursue any further remedy and such decision does not evidence ineffective assistance.  Jones v. State, 280 Ga.

10

205 (2) (b) (625 SE2d 1) (2005); <u>Rucker v. State</u>, 268 Ga. 406 (2) (489 SE2d 844) (1997).  The trial court did not err in denying appellant's motion for new trial on this issue.

<u>Judgment affirmed.  All the Justices concur.</u>