In the Supreme Court of Georgia

Decided: February 22, 2016

S15A1913.  KELLAM v. THE STATE.

BENHAM, Justice.

Appellant Jaworski Dune Kellam was convicted of  malice murder and
other charges arising out of the death of seventeen-month-old A'Trevia Davis,
and he appeals.[1]  For the reasons set forth herein, we affirm.

The evidence adduced at trial, viewed in the light most favorable to the
verdict, shows the child's mother left her with appellant, who was the mother's
friend, around 6:00 a.m.  The mother testified that the child was fine and she
saw no evidence of injuries on the child's neck either at the time she left that
morning or the prior day.  Later in the day, the child was rushed to the hospital

[1]  The crimes occurred on August 17, 2005.  On October 4, 2005, a Laurens County grand
jury returned an indictment charging appellant with malice murder, felony murder (cruelty to
children), and cruelty to children.  Appellant was tried September 17-18, 2007, and the jury returned
a verdict of guilty on all charges.  The felony murder conviction was vacated as a matter of law, and
the trial judge sentenced appellant to imprisonment for life without parole for the malice murder
conviction, and imprisonment for a term of twenty years to serve concurrently for the cruelty to
children conviction.  On October 10, 2007, appellant filed a motion for new trial.  After a hearing,
the trial court denied the motion for new trial by order dated February 5, 2009.  Appellant filed a
motion for out-of-time appeal, which the trial court granted September 11, 2014.  The case was
docketed in this Court to the September 2015 term for a decision to be made on the briefs.

after appellant claims he found her unresponsive in the bedroom.

Appellant told others who testified at trial that he had been playing with the child by throwing her on the bed, and then he left her for her nap. When he returned to the room she would not wake up and her eyes were rolled back in her head. Appellant sought help from a neighbor who testified he found the child was "slightly breathing," and that he started CPR before taking the child to the hospital. This neighbor testified he was trained and experienced in administering CPR to children. Hospital attendants examined the child and found she was not breathing, was listless, and had no pulse. Resuscitation efforts failed and the child died.

In response to being asked, appellant told nurses that the victim had not fallen off the bed. Nurses noted injuries to the victim's wrist and neck, abrasions that likely occurred within 30 to 40 minutes before examination, and noted that the victim's abdomen had started to swell. A GBI medical examiner testified at trial that she performed an autopsy on the child to determine cause of death. During the examination, she found recent injuries to the victim's face and neck, as well as bruising around the victim's abdomen. The medical examiner's internal examination revealed bleeding within the abdomen, severe

injuries to the victim's liver, hemorrhaging around the kidneys and stomach, and also revealed that the victim had bled out approximately twenty percent of her blood into her abdominal cavity. According to the medical examiner, the cause of death was a severe blunt-force injury to the abdomen. She concluded the severity of injuries to the victim's abdomen required a "tremendous" amount of blunt force in order to produce them, akin to being punched with a clinched fist, being kicked, or being in an automobile accident. She testified that these injuries were inconsistent with vigorous or misapplied CPR and with appellant's story that he had tossed the victim into the air and threw her back onto the bed.

1. Even though appellant does not challenge the sufficiency of the evidence to sustain his convictions, it is this Court's practice in murder cases to conduct an examination of the record to determine the legal sufficiency of the evidence. Having done so, we conclude the evidence adduced at trial, and summarized above, was legally sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that while the victim was in appellant's care he fatally injured her in the manner alleged in the indictment and was guilty of the crimes of which he was convicted. See *Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LEd2d 560) (1979).

2. Appellant asserts the trial court erred by denying his request to charge the jury on accident. Although appellant did not testify in order to give his own statement of events surrounding the child's death, he asserts that the testimony of State's witnesses who related what appellant told them was sufficient to create an issue as to whether the death was caused by accident and to require the requested charge. Whether the evidence presented is sufficient to authorize a charge on accident, or any other defense, is a question of law. *Wilson v. State*, 279 Ga. 104, 105 (2) (610 SE2d 66) (2005). We find the evidence presented in this case did not authorize a charge on accident.

First, the only evidence presented regarding the cause of death was that the child's death was caused by "tremendous" blunt force trauma that could not have been the result of the child's falling off the bed or a self-inflicted injury. According to the medical examiner, the extensive internal injuries found in the child's abdomen could not have been inflicted accidentally. She further stated that there was no way the child could have sustained her injuries around the home other than by something similar to a blow from a fist or a kick. Appellant did not challenge this testimony on cross-examination, nor did he present evidence to dispute this testimony. Since accident was not reasonably raised by

4

the evidence, the trial court did not err by failing to give a charge on that defense. See *Fain v. State*, 165 Ga. App. 188, 189 (3) (300 SE2d 197) (1983). "[A]n affirmative defense of accident generally requires an admission by the defendant that [he] committed the act that caused the victim's death." *Smith v. State*, 296 Ga. 116, 119-120 (2) (765 SE2d 328) (2014). At the least, a defendant's theory of accident, whether it be supported by defendant's admission or some other evidence, must be consistent with the undisputed evidence of cause of death, which was not the case here. By way of explaining what happened to the child, appellant stated to others only that he had bounced the child on the bed in play. He did not admit to others that he struck the child with "tremendous" force or even that she had fallen off bed or onto any other object with such force. In fact, he denied to the hospital nurse that the child had fallen off the bed.

Appellant argues that whether the accidental death of the child could have resulted from his playing with the child, in the manner he related to witnesses, was a question for the jury and not the medical examiner or trial judge. Given the undisputed testimony about the extent of the child's internal injuries, however, no evidence was presented that the child could have suffered those

5

injuries in a manner consistent with appellant's statements about bouncing the child on the bed. See *Grubbs v. State*, 167 Ga. App. 365, 367 (2) (306 SE2d 334) (1983) ("While being mindful that the trial court cannot invade the province of the jury by arbitrarily rejecting a defense theory . . . as unworthy of belief and refusing to charge upon the issue raised," where no evidence was presented that the child could have suffered the injury described by the doctors from the acts described by the defendant, the evidence fell short of creating an issue of accident.).

Secondly, an affirmative defense is one "that admits the doing of the act charged but seeks to justify, excuse, or mitigate it. Accordingly, if a defendant does not admit to committing any act which constitutes the offense charged, he is not entitled to a charge on the defense of accident." (Citation and punctuation omitted.) *Mangrum v. State*, 285 Ga. 676, 680 (6) (681 SE2d 130) (2009). In this case, the indictment returned against appellant accused him of the offense of murder "by inflicting blunt force trauma injuries to [the child's] abdomen with an unknown solid object . . . ." The indictment also accused appellant of cruelty to children by maliciously causing the child "to suffer excessive physical and mental pain by inflicting blunt force trauma injuries to her abdomen with

6

an unknown solid object . . . ." Appellant was also accused of felony murder by causing the child's death in the commission of the felony of cruelty to children by inflicting the same injuries in the same manner as those alleged in the cruelty to children count. Appellant presented no evidence that he admitted the act described in each count of the indictment–the infliction of blunt force trauma injuries to the victim's abdomen with a solid object. Instead, the evidence showed he admitted only to playing with the victim by bouncing her on the bed. Additionally, according to the undisputed testimony of the medical examiner, the act of bouncing the child on the bed could not have been the act that caused the injuries that were alleged in the indictment and confirmed by the post-mortem examination of the child. Appellant could argue, as he did in trial counsel's closing, that the State had failed to meet its burden of proof that appellant committed the act alleged in the indictment. Because, however, appellant failed to "establish an evidentiary foundation to authorize a charge on the defense of accident, the trial court did not err in denying his request." *Durden v. State*, 327 Ga. App. 173, 179 (6) (755 SE2d 909) (2014).

Furthermore, the alleged justification that the victim's injuries were caused by appellant's merely bouncing her on the bed fails to meet the statutory

7

definition of accident. "A person shall not be found guilty of any crime committed by misfortune or accident where it satisfactorily appears there was no criminal scheme or undertaking, intention, or criminal negligence." OCGA § 16-2-2. Accordingly, in order to claim accident, "it must be established a defendant acted without criminal intent, was not engaged in a criminal scheme, and was not criminally negligent, i.e., did not act in a manner showing an utter disregard for the safety of others who might reasonably be expected to be injured thereby." *Wilson v. State*, 279 Ga. 104, 105 (2) (610 SE2d 66) (2005); see also *Jackson v. State*, 329 Ga. App. 240, 242-243 (764 SE2d 569) (2014). In order for this victim's extensive and deadly injuries to have been sustained as a result of appellant's bouncing her on a bed, appellant would necessarily have been acting recklessly, and therefore with criminal negligence.[2] See *Browner v. State*, 296 Ga. 138 (4) (765 SE2d 348) (2014) (appellant's testimony established his conduct constituted criminal negligence, thus negating the theory of accident). A charge on accident is not authorized when, as here, the alleged accident occurs while the defendant is acting recklessly. See id.

---

[2] "Criminal negligence is an act or failure to act which demonstrates a willful, wanton, or reckless disregard for the safety of others who might reasonably be expected to be injured thereby." OCGA § 16-2-1 (b).

8

3. Appellant also asserts the trial court erred by denying his request to charge on involuntary manslaughter, again, premised on the testimony of witnesses that appellant told them he had been playing and throwing the child on the bed before he returned to the room and discovered her in distress. Again, we conclude a charge on this defense was not authorized as a matter of law.

Appellant asserts the evidence was sufficient to raise a jury issue and require a jury charge with respect to whether he is guilty of involuntary manslaughter by committing a lawful act in an unlawful manner, as governed by OCGA § 16-5-3 (b).[3] The only act appellant admitted to others in this case was the act of throwing the victim on the bed while playing with her. As discussed in Division 2, however, the undisputed evidence established that the victim's injuries could not have been sustained in the manner appellant related to the witnesses. Here, the undisputed evidence was that the injuries were so severe that they could only have been inflicted by something akin to a blow from a fist or a kick with "tremendous force."

---

[3] OCGA § 16-5-3 (b) provides: "A person commits the offense of involuntary manslaughter in the commission of a lawful act in an unlawful manner when he causes the death of another human being without any intention to do so, by the commission of a lawful act in an unlawful manner likely to cause death or great bodily harm."

Even if the jury accepted appellant's statement that he bounced the child on the bed, his conduct, if it were the cause of the child's fatal injuries, could not have been lawfully playful but could only have been reckless and criminally negligent. "[Appellant's] conduct, as related by him, comes so plainly within the definition of the crime of 'reckless conduct' that it cannot qualify as a 'lawful act.' The refusal to give the requested charge was not error." *Harmon v. State*, 259 Ga. 846, 849 (4) (a) (388 SE2d 689) (1990) (fatal injuries caused by inserting a douche bottle into a 27-month old child's rectum in the course of giving the child an enema, as appellant told the investigating authorities, was done in such a manner as to cause a two-inch tear in the child's viscera, and therefore could not qualify as a lawful act pursuant to OCGA § 16-5-60 (b)). See also *Paul v. State*, 274 Ga. 601 (3) (a) (555 SE2d 716) (2001) (appellant's acts in disciplining the child victim were so severe that they plainly came within the definition of reckless conduct and did not qualify as a lawful act so as to require an instruction on lawful act–unlawful manner involuntary manslaughter); *Moses v. State*, 264 Ga. 313, 315 (2) (444 SE2d 767) (1994) (appellant's admission to authorities that he placed his hand over an infant's mouth to keep him from crying and waking the infant's mother did not require

a charge on involuntary manslaughter where the evidence showed his hand was placed so forcefully as to prevent the child's breathing for a period sufficient to result in irreversible brain damage and therefore plainly came within the definition of the crime of reckless conduct).

Judgment affirmed. All the Justices concur.