304 Ga. 5
FINAL COPY

S18A0327.  WADE v. THE STATE.

HUNSTEIN, Justice.

Appellant Nicholas Clarence Wade was convicted of murder and related offenses arising out of the beating death of Keon Belk, as well as the aggravated assault of Vinnie Jones.  On appeal, Appellant contends that the jury was improperly charged, that the trial court erroneously admitted certain testimony and evidence, and that he was improperly sentenced.  Though we find no reversible error with respect to the verdicts, we agree that Appellant was erroneously sentenced, and we must, therefore, vacate and remand for resentencing.[1]

---

[1] On January 29, 2015, a DeKalb County grand jury indicted Appellant Nicholas Clarence Wade for the following charges related to crimes committed against Keon Belk, Vinnie Jones, and Jillian Belk: malice murder of Keon (Count 1); felony murder of Keon predicated on cruelty to children in the first degree (Count 2); felony murder of Keon predicated on aggravated assault (Count 3); cruelty to children in the first degree of Keon (Count 4); aggravated assault of Keon (Count 5); aggravated battery of Keon (Count 6); aggravated assault of Jones, a peace officer (Count 7); aggravated assault of Jillian (Count 8); possession of a firearm during the commission of a felony (Counts 9 and 10); possession of an illegal weapon (Count 11); and possession of a firearm by a convicted felon (Count 12).
Appellant was tried from April 27 through May 4, 2015, on Counts 1 through

Viewed in a light most favorable to the verdicts, the evidence and testimony adduced at trial established as follows. At all relevant times, Appellant lived with Jillian Belk and her 18-month-old son, Keon, in a house in DeKalb County, Georgia. Jillian worked at a hospital and would leave the house for her shift around 5:20 a.m. Appellant was Keon's sole caretaker in Jillian's absence. In the days prior to Keon's death, Jillian noticed bumps and bruises on Keon's body, including a blackening of his toes, new scratches on his back and foot, and a scab over his eye. When asked about the injuries,

_____

11 of his indictment, Count 12 having been severed pre-trial. At the close of the State's case, the trial court directed a verdict of acquittal as to the aggravated assault of Jillian (Count 8) and the related weapon offense (Count 10); the jury found Appellant guilty of all remaining charges. The trial court sentenced Appellant to life without parole for malice murder (Count 1), twenty years concurrent for both aggravated battery (Count 6) and aggravated assault on a peace officer (Count 7), five years consecutive for possession of a firearm during the commission of a felony (Count 9), and 12 months for possession of an illegal weapon (Count 11). The trial court vacated both felony murder charges (Counts 2 and 3), merged the cruelty charge (Count 4) into the first vacated felony murder charge (Count 2) and also merged the remaining aggravated assault charge (Count 5) into the second vacated felony murder charge (Count 3). As discussed below, there are merger issues.

Appellant filed a motion for new trial on July 8, 2015, which he subsequently amended through new counsel on July 15, 2016 and May 19, 2017. After a hearing, the trial court summarily denied the motion as amended on August 7, 2017. Appellant filed a notice of appeal to this court on August 24, 2017. This case was docketed to the term of this Court beginning in December 2017 and was thereafter submitted for a decision on the briefs.

2

Appellant reported that the injury on Keon's back was caused by another child, that the injury to his foot was caused by a bike chain, and that the above-the-eye injury resulted from a fall; Jillian was satisfied with Appellant's explanations. No family members noticed any changes in Keon's personality or behavior prior to his death, and Keon's medical history indicated that he was a normal, healthy child.

On the morning of February 3, 2014, Jillian left for work at her normal time. About an hour later, EMTs responded to an emergency at her shared residence. When they arrived, Keon was unconscious and unresponsive. Appellant informed the EMTs that he had put Keon to bed around 8:00 the night before and that he had heard a loud bang the next morning, which prompted him to perform CPR on Keon and call 911. Keon was taken to DeKalb Medical Center at Hillandale where the doctors performed CPR for 20 minutes until they were able to reestablish the child's pulse. Appellant told the attending nurse that Keon had experienced cold-like symptoms over the last couple of weeks and had not experienced any trauma prior to being brought to the hospital. Keon was subsequently transported to Egleston Children's Hospital. At this time, Appellant called Jillian to inform her that Keon "wasn't breathing right" and

3

that the child was being transported to Egleston Hospital; Jillian immediately headed to Egleston. Appellant continued to communicate with Jillian over the phone, telling her that he had fallen on top of Keon after tripping on a make-shift baby gate and that Keon had previously injured himself after falling out of bed and hitting a lockbox. Appellant apologized many times without explanation.

Upon arriving at Egleston, Keon was on a ventilator; he could not breathe on his own and continued to be unresponsive. The treating physician noted bruising on Keon's head and a healing burn on the child's toes. After conducting numerous tests, the doctor determined, among other things, that: Keon had a healing rib and leg fracture; his brain was swollen and bleeding; he had injuries to his liver, pancreas, and kidneys; he was experiencing retinal bleeding and had fluid in his abdomen and lungs; and his ribcage and spine had been forcefully compressed. Keon's treating physician concluded that the child's injuries were consistent with abuse, that his liver lacerations were the result of blunt force trauma to the abdomen inflicted by "some sort of blow, a punch, [or] a kick," and that his rib and spine injuries were consistent with the child being squeezed and slammed. The doctor testified that a child would not sustain such injuries

4

by falling out of bed and that the injuries could not have been caused accidentally. Keon died from his injuries on February 4, 2014. The medical examiner opined that Keon's death was the result of delayed complications from non-accidental blunt force abdominal trauma and that Keon's injuries were consistent with being kicked and punched in his chest and abdomen.

After Keon's death, law enforcement were unable to locate Appellant. Jillian, however, alerted authorities when Appellant contacted her, and she agreed to meet Appellant at an apartment complex behind a nearby shopping center; officers followed Jillian to the meeting point. Appellant got into the front passenger seat of Jillian's car, again apologized for Keon's death, and asked her, "What are we going to do?" Appellant had a sawed-off shotgun in his lap and a bag filled with personal items, including clothes, a cell phone, and money. Officers followed Jillian as she drove away from the apartment complex with Appellant as a passenger and eventually initiated a traffic stop; Jillian pulled into a church parking lot. DeKalb County Investigator Victor Jones saw Appellant sitting in the front passenger seat, and he pulled his police car in front of Jillian's vehicle to ensure it would come to a complete stop. As Jones exited his vehicle, he saw Appellant holding the shotgun to his chin as if he were going

5

to commit suicide. Investigator Jones drew his service weapon and warned Appellant not to shoot, after which Appellant lowered the weapon in Jones' direction and fired; a nearby officer returned fire. Appellant was injured during the exchange of gunfire, but he was given aid and subsequently arrested.

While incarcerated, Appellant spoke with Danny Cooper, an acquaintance, regarding Keon's care and subsequent death. Appellant explained that, prior to Keon's death, he was trying to make Keon "tough," and he admitted to putting Keon's foot in a space heater, striking him with a remote control, and kicking him in the chest as a form of punishment. As to the morning in question, Appellant admitted to Cooper that, after Jillian left for work, he kicked and punched Keon and then put him back to sleep on the couch. Appellant noticed Keon's labored breathing and, when he checked on the child sometime later, he discovered that Keon's face had turned blue.

1. Although Appellant does not challenge the sufficiency of the evidence, it is our customary practice in murder cases to review the record independently to determine whether the evidence was legally sufficient. Having done so, we conclude that the evidence as summarized above was sufficient to authorize a rational trier of fact to conclude beyond a reasonable doubt that Appellant was

6

guilty of the crimes of which he was convicted. See Jackson v. Virginia, 443

U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Appellant first argues that the trial court erred when it failed to give his requested instructions on accident, as well as the State's burden to disprove affirmative defenses beyond a reasonable doubt. Specifically, Appellant contends that Jillian's testimony concerning Appellant's explanation of Keon's fatal injuries — namely that Keon hit a lockbox after falling out of bed and that Appellant fell on top of Keon after tripping over a gate — constituted "slight evidence" sufficient to warrant the instructions. Whether the evidence was sufficient to warrant the requested instruction is a legal question, which we review de novo. See Wilson v. State, 279 Ga. 104 (2) (610 SE2d 66) (2005).

OCGA § 16-2-2 states that "[a] person shall not be found guilty of any crime committed by misfortune or accident where it satisfactorily appears there was no criminal scheme or undertaking, intention, or criminal negligence." The affirmative defense of accident arises when a defendant contends that his acts were accidental or a product of misfortune rather than criminal intent or negligence. See Kellam v. State, 298 Ga. 520 (2) (783 SE2d 117) (2016). Evidence that Keon may have fallen from the bed while sleeping and injured

7

himself does not "involve *homicide by accident* . . . but only death from accidental means not attributable to any conduct, culpable or otherwise, on the part of the defendant." (Emphasis in original.) Johnson v. State, 239 Ga. 324, 325 (236 SE2d 661) (1977). Cf. Smith v. State, 296 Ga. 116, 119-120 (765 SE2d 328) (2014) (accident defense unwarranted where defendant's theory was that victim accidentally started fire herself). Likewise, Appellant's "admission" that, in the days leading up to Keon's death, he had "tripped over a board" and fallen on top of the boy does not account for the extent of Keon's injuries, and, thus, is no basis for an accident instruction. See Kellam, 298 Ga. at 523.

Nevertheless, even if the evidence supported an instruction on accident, the trial court's refusal to give the instruction does not mandate reversal. "Th[e] accident defense applies where the evidence negates the defendant's criminal intent, whatever that intent element is for the crime at issue." State v. Ogilvie, 292 Ga. 6, 9 (734 SE2d 50) (2012). "Here, the jury was properly and fully instructed that the State had the burden of proving beyond a reasonable doubt that [Appellant] acted with the requisite malicious intent to commit each of the crimes charged," and "[t]he jury's conclusion that [Appellant] acted with malice thus necessarily means that it would have rejected any accident defense, which

8

is premised on the claim that he acted without any criminal intent." Sears v. State, 290 Ga. 1, 3-4 (717 SE2d 453) (2011). See also Thomas v. State, 297 Ga. 750 (2) (778 SE2d 168) (2015).

3. Appellant successfully moved in limine to prevent "character evidence" and "other acts" evidence from being presented by the State; Appellant asserts that the State twice violated this order. In the first instance, Jillian testified that Appellant, while in the church parking lot and armed with the sawed-off shotgun, "sa[id] that he wasn't going back to jail, and he put the gun under his chin." The trial court sustained Appellant's objection and motion to strike, and the jury was instructed to disregard the comment. Later, Cooper testified that Appellant told him that he was carrying the sawed-off shotgun after Keon's death because he was "not going back to prison." Following this statement, Appellant objected and moved for a mistrial. The trial court sustained the objection, denied the mistrial, and provided a curative instruction; Appellant objected to the curative instruction and again moved for a mistrial. Following argument from counsel, the trial court concluded that the statements were, contrary to the earlier ruling, likely admissible and denied the motion for

9

mistrial.[2]  On appeal, Appellant contends that the trial court's decision was erroneous.  We review this claim for abuse of discretion.  See Smith v. State, 302 Ga. 699 (3) (808 SE2d 692) (2017).

Generally speaking, "[e]vidence of a person's character or a trait of character shall not be admissible for the purpose of proving action in conformity therewith on a particular occasion[.]" OCGA § 24-4-404 (a).  Likewise, absent exception, "[e]vidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. . . . " OCGA § 24-4-404 (b).  Though Appellant contends that the statements from Jillian and Cooper placed Appellant's *prior felony* before the jury, he overstates his case.  Instead, the record reflects that: the State instructed Jillian not to reference Appellant's criminal history and Cooper's testimony was a surprise; the witnesses' statements were nonresponsive; the statements simply referenced Appellant's prior incarceration; and the trial court provided a curative instruction, which the jury is presumed to have followed, see Womac

---

[2] Though Appellant contends that the trial court reversed its pre-trial ruling, the transcript reflects that the trial court merely announced that it was "prepared to vacate that order, if necessary."

v. State, 302 Ga. 681 (2) (808 SE2d 709) (2017). Under these circumstances, Appellant's character was not put at issue, and the trial court did not abuse its discretion when it denied Appellant's motions for a mistrial. See Graves v. State, 298 Ga. 551 (3) (783 SE2d 891) (2016).[3]

4. Appellant also contends that the State adduced improper expert testimony and that, as such, he was entitled to a mistrial. Relevant here, Dr. Tamika Bryant, a physician at Egleston Children's Hospital, testified that Keon's injuries were "nonaccidental" and were consistent with a "stomp, kick, or punch." Likewise, the medical examiner opined that some of Keon's injuries were "nonaccidental," meaning that the injury "was inflicted by another

---

[3] Appellant also takes issue with the trial court's curative instruction, which was provided as follows:

> All right, thank you, ladies and gentlemen. In consultation with the lawyers you heard an impermissible response to one of the State's questions. I'm going to direct that you disregard that last response concerning the defendant's express desire not to return or return to incarceration and disregard that comment and not consider it during the course of your deliberations.

While it would be a better practice to avoid repeating the witness's statement, because the reference to Appellant's prior incarceration was minimal — and because those references do not amount to inadmissible character evidence — we cannot say that the trial court's curative instruction constituted reversible error. See Roaderick v. State, 257 Ga. App. 73, 75 (570 SE2d 382) (2002) (trial court's instruction that repeated witness's testimony concerning prior incarceration not reversible error).

11

individual." The trial court denied Appellant's repeated requests for a mistrial, and, on appeal, Appellant continues to argue that the above-quoted testimony was inadmissible under OCGA § 24-7-704 (b). We disagree.

OCGA § 24-7-704 (b) ("Rule 704 (b)") provides as follows:

> No expert witness testifying with respect to the mental state or condition of an *accused* in a criminal proceeding shall state an opinion or inference as to whether the accused did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto. Such ultimate issues are matters for the trier of fact alone.

(Emphasis supplied.) "An expert testifies 'with respect to' the mental state or condition of a defendant when an inference of the facts testified to is that *the defendant* had the mental state or condition constituting an element of the crime." (Emphasis supplied.) United States v. Alvarez, 837 F2d 1024, 1031 (11th Cir. 1988). The operative language of Rule 704 (b) focuses on *the defendant* and prohibits opinion testimony as to whether he did or did not have the requisite intent. Id.

Though Appellant argues that the testimonies of the experts "at a minimum . . . injected the impermissible inference that Wade caused Keon's injuries intentionally," this is simply not the case. The expert's testimony

12

concerned the nature of the *injuries* inflicted on the victim, not the mental state of the defendant. As we recently explained, "[w]hether *the accused* committed an intentional act to harm the victim is a different question than whether *someone* likely committed an intentional act to harm the victim." (Emphasis in original.) Eller v. State, 303 Ga. 373, 383 (IV) (B) (811 SE2d 299) (2018). Thus, there was no Rule 704 (b) violation here. Id. ("Because the medical examiner's testimony that [the victim's] injuries were inconsistent with an accidental shooting did not supply or mandate a conclusion that Appellants did or did not have the requisite mental intent for any crime or defense, there was no violation of Rule 704.").

5. Over Appellant's objection, the State elicited testimony from Cooper that, during the trial, he received a postcard that threatened his mother and grandmother. The postcard, which was offered into evidence by Appellant, states as follows:

> Danny waz up? Hope all is well with the family. The homies are going to remodel mom and grandma house for mother's day present. Frog he need to take heed price is set on the street and down the road. Frog got a x-ray at medical, all the homies know. We seen the clown. Lesser then a man to allow the homie to get a life sentence because of his own f**k ups. Danny keep ya head up and prey for the family. A real n***a die on his feet before he live

13

on his knees. The meteorologist say it will rain in Lithonia a whole week then in the month of May. The choice is up to Frog. From the west to the east if little homie fall then all blood is on Frog hands. May allah be wit ya Danny and may peace be multiplied to mom's and Johnson St.

Appellant argues on appeal, as he did below, that the threat evidence was inadmissible against Appellant because it could not be directly connected to him. We review this enumeration of error for abuse of discretion. See Anglin v. State, 302 Ga. 333 (2) (806 SE2d 573) (2017).

In Georgia, "evidence of a defendant's attempt to influence or intimidate a witness can serve as circumstantial evidence of guilt." Kell v. State, 280 Ga. 669, 671 (631 SE2d 679) (2006). Evidence of an attempt made "by a third person to influence a witness not to testify or to testify falsely is relevant and may be introduced into evidence in a criminal prosecution on the issue of the defendant's guilt where it is established that the attempt was made with the authorization of the accused." (Citations and punctuation omitted.) Id. However, "evidence of a threat or attempt to influence a witness made by a third party must be linked to the defendant in order to be relevant to any material issues." Johnson v. State, 255 Ga. App. 721, 722 (566 SE2d 440) (2002).

While the postcard was ostensibly sent by someone named "Marcus

14

Garvey," the timing of its delivery, as well as its content, links it to Appellant. At trial, Cooper testified that he had known Appellant for a few years and that he knew Appellant from "the neighborhood." Specifically, Cooper testified that Appellant lived in the same *Lithonia* neighborhood as Cooper's *mother*, who lives on *Johnson Street*. The postcard uses Cooper's given name, as well as his nickname — "Frog" — which Appellant knew and used. The note also references Cooper receiving an "x-ray at medical." The most damning portions of Cooper's testimony — which involved admissions by Appellant concerning Keon's abuse and murder — arose from conversations between Appellant and Cooper while the two men were confined to the *medical* floor of the DeKalb County Jail, where Cooper was receiving treatment for a shoulder injury; there is no indication that anyone other than Appellant would have understood this connection. Finally, though the postcard does not reference Appellant or murder, it indicates that Cooper could avoid the implied violence if he chose not to let his "homie" get a life sentence — which comes from only the most serious of crimes, such as murder — and the postcard was delivered *during* Appellant's trial where Cooper was scheduled to testify. There was thus sufficient evidence to support a "reasonable and plain inference" that Appellant was responsible for

15

the postcard and, as such, it was properly admitted. See Redding v. State, 297 Ga. 845 (5) (a) (778 SE2d 774) (2015); Lindsey v. State, 295 Ga. 343 (3) (760 SE2d 170) (2014).

6. Appellant next argues that the trial court erred in failing to give an instruction on circumstantial evidence pursuant to OCGA § 24-14-6. As Appellant acknowledges, this enumeration of error was not properly preserved and, thus, is reviewed for plain error only. See OCGA § 17-8-58 (b); Terry v. State, 291 Ga. 508, 509 (731 SE2d 669) (2012) ("We review for plain error an alleged jury-instruction error if the error is properly enumerated and argued on appeal."). Our now-familiar plain error standard involves the following four prongs:

> First, there must be an error or defect — some sort of deviation from a legal rule — that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the [trial] court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the *discretion* to remedy the error — discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

16

(Citations and punctuation omitted; emphasis in original.) State v. Kelly, 290 Ga. 29, 33 (718 SE2d 232) (2011). "Reversal is authorized only if all four prongs are satisfied — a 'difficult' standard indeed." Carruth v. State, 290 Ga. 342, 348 (721 SE2d 80) (2012).

This Court has long held that it is error to refuse a charge on the law of circumstantial evidence if such a charge is requested by a defendant. See, e.g., Stubbs v. State, 265 Ga. 883 (1) (463 SE2d 686) (1995); Mims v. State, 264 Ga. 271, 271 (443 SE2d 845) (1994). However, in the absence of such a request, "a trial court is required to charge on the law of circumstantial evidence as set forth in . . . OCGA § 24-14-6 only if the State's case against the defendant is wholly circumstantial." Walker v. State, 295 Ga. 688, 691 (763 SE2d 704) (2014). Here, Appellant did not request an instruction pursuant to OCGA § 24-14-6,[4] and the State's case was not wholly circumstantial; accordingly, Appellant has failed to demonstrate a clear or obvious legal error that would support reversal

---

[4] Appellant contends that he and the State jointly requested an instruction pursuant to OCGA § 24-14-6. While it is clear that *the State* made such a request — which the trial court granted (but subsequently failed to honor) — neither the record nor the transcript indicates that Appellant joined in this request. Appellant does not argue that the State's request for such an instruction is sufficient to preserve or create error.

17

under our plain error standard.

7. Appellant also contends that the trial court abused its discretion when it allowed the State to reopen its case to adduce additional testimony concerning venue, namely, the location of New Birth Church. Pretermitting whether the trial court's actions were sound, any error is harmless. During its case-in-chief, the State adduced a map depicting the location of the church, which plainly shows the church located in DeKalb County, Georgia, and the jury had already heard testimony that the officers involved in the incident worked for DeKalb County. See Propst v. State, 299 Ga. 557 (1) (b) (788 SE2d 484) (2016); Martin v. McLaughlin, 298 Ga. 44, 47-48 (779 SE2d 294) (2015). Because the evidence adduced by the State when it reopened its case was merely cumulative of evidence already presented to the jury, any error is harmless, and this claim is without merit.

8. While the evidence was sufficient to sustain Appellant's convictions and we find no merit to his other enumerations of error, we now address his contention that the trial court erroneously merged certain counts for sentencing. Specifically, we agree with Appellant that Count 6 — aggravated battery premised on Appellant rendering Keon's liver useless (on the same day as the

18

murder) — merges with malice murder for the purposes of sentencing and, consequently, that the trial court erred in sentencing him on this count. See Ledford v. State, 289 Ga. 70 (1) (709 SE2d 239) (2011). Though the State argues that the aggravated battery count is supported by evidence that Keon suffered various injuries from numerous different traumas on the day of his death, there no indication that the injury was not suffered as part of a single, continuous course of conduct; indeed, the evidence indicates that both crimes were the result of Appellant beating the child on the morning in question. See Soilberry v. State, 289 Ga. 770 (716 SE2d 162) (2011).

Judgment affirmed in part and vacated in part, and case remanded. All the Justices concur.

Decided June 18, 2018.

Murder. DeKalb Superior Court. Before Judge Scott.

Matthew K. Winchester, for appellant.

Sherry Boston, District Attorney, Anna G. Cross, Otobong U. Ekpo, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Michael A. Oldham, Assistant Attorney General, for appellee.