311 Ga. 466
FINAL COPY

S21A0070.  BONNER v. THE STATE.

BETHEL, Justice.

Lernard Bonner[1] appeals his conviction for felony murder in connection with the shooting death of Lekeshia Moses.[2] Bonner contends that the evidence was insufficient to support his conviction and that the trial court erred by failing to charge the jury on accident. We affirm.

---

[1] Although Bonner's name appears as "Leonard Bonner" on the Notice of Appeal, this appears to be a misspelling, as both the indictment and Bonner's brief refer to him as "Lernard Bonner."

[2] The crimes occurred on July 1, 2016. In November 2017, a Muscogee County grand jury indicted Bonner for malice murder, felony murder, and aggravated assault. At a jury trial in April 2018, Bonner was found guilty of involuntary manslaughter as a lesser offense of malice murder, felony murder, and aggravated assault. The trial court sentenced Bonner to life in prison for felony murder. The trial court vacated the involuntary manslaughter count and merged the aggravated assault count with the felony murder count. On May 4, 2018, Bonner filed a motion for new trial, which he amended through new counsel on January 15, 2020. The trial court denied the motion for new trial, as amended, on February 7, 2020, and Bonner filed a timely notice of appeal on February 17, 2020. This case was docketed in this Court to the term commencing in December 2020 and submitted for a decision on the briefs.

1. Viewed in the light most favorable to the verdict, the evidence presented at trial showed the following. In the summer of 2016, Moses was staying at her friend Sakima Grier's apartment to help Grier care for her three children. Bonner, who was in a relationship with Moses and knew Grier, went to visit Moses at the apartment on the night of June 30.

The next morning, Grier woke up to get her children ready for daycare. Grier walked down the hall to her son's room where Moses and Bonner were staying to talk to them about their plans for the day. During their conversation, Grier saw Bonner sitting on the edge of the bed holding a revolver. Grier told Bonner that she did not allow guns in the house because her young son would pick things up and play with them. Grier told Bonner to get rid of the gun.

Bonner complained that he was tired. He then dumped all of the bullets out of the revolver into his hand, placed the bullets on the windowsill, and put the revolver under his pillow. Grier left and returned to her room. Grier's four-year-old daughter, who referred

to Moses as "Auntie" and to Bonner by his nickname, "Baby," went into the room with Moses and Bonner.

A few minutes after returning to her room, Grier heard a sound. Moments later, Grier's daughter ran out of the room where Moses and Bonner were staying saying, "Baby shot my auntie. Baby shot my auntie." Grier put her children in the master bedroom and went back out into the hallway. Bonner exited the bedroom into the hallway and grabbed Grier, stating, "I ain't tried to. It was an accident. I'm sorry." Grier entered the room where the couple had been staying and saw Moses lying in bed bleeding from her jaw. Bonner left the apartment. Grier called 911 and did not see Bonner after she placed the call. Grier also noticed that the bullets Bonner had previously placed on the windowsill were gone.[3]

Moses was later pronounced dead at the hospital. Other than some markings from medical intervention on the body, as well as the gunshot wound to the left side of her jaw, there were no wounds

---

[3] Witnesses testified that Bonner and Moses generally had a "good" and "playful" relationship, and that the two were heard laughing and talking moments before the shooting.

found on Moses's body. The medical examiner confirmed that the gunshot wound was fatal.

There was no sign of a struggle in the bedroom. Police officers recovered an unspent Winchester brand .38-caliber Special bullet from under the bed in the bedroom. Bonner, who was not at the scene when the police arrived, turned himself in on July 2. No gun was ever recovered.

At trial, a firearms examiner testified that another .38-caliber bullet was recovered during Moses's autopsy. That bullet was tested and found to be consistent with having been fired from a revolver. The firearms examiner further testified that there are two types of revolvers: single-action and double-action. A single-action revolver requires the hammer to be physically pulled back in order to fire and has a three-pound trigger weight. A double-action revolver does not require the hammer to be physically pulled back, but requires seven to ten pounds of pressure to pull the trigger, and the trigger has to be pulled back farther and held back in order for the hammer to fall forward and cause the gun to fire. Thus, the revolver used to shoot

4

Moses either required force to pull the hammer back as a separate preparatory act before firing, or it required a greater degree of force against the trigger to both draw the hammer and discharge the weapon.

Grier also testified that the gun she saw Bonner holding was rusty. The firearms examiner testified that while a revolver's rusty condition could impact its functionality or internal safeties, the rust would not increase the likelihood of the gun firing accidentally. If anything, rust could cause the gun to not work at all.

2. Bonner argues that the evidence presented at his trial was legally insufficient to support his conviction because the State failed to prove that he possessed the requisite intent to commit the offense of aggravated assault with a deadly weapon, which was the predicate offense for his felony murder conviction. See *Holliman v. State*, 257 Ga. 209, 210 (1) (356 SE2d 886) (1987) ("Felony murder . . . require[s] that the defendant possess the requisite criminal intent to commit the underlying felony."). We disagree.

OCGA § 16-5-1 (c) provides that "[a] person commits the offense of murder when, in the commission of a felony, he or she causes the death of another human being irrespective of malice." OCGA § 16-5-21 (a) provides, in relevant part, that "[a] person commits the offense of aggravated assault when he or she assaults . . . [w]ith a deadly weapon[.]" This offense requires proof of an underlying assault, which can be shown by evidence of the defendant's attempt to inflict a violent injury upon another or intent to do an act that places another in reasonable apprehension of immediate violent injury. See OCGA § 16-5-20 (a) (defining assault); see also *Guyse v. State*, 286 Ga. 574, 576-577 (2) (690 SE2d 406) (2010).

In reviewing the sufficiency of the evidence as a matter of constitutional due process, this Court views the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979). Any conflicts in the evidence

are resolved by the jury. See *Walker v. State*, 296 Ga. 161, 163 (1) (766 SE2d 28) (2014).

When viewed in this light, the evidence presented at trial and summarized above was sufficient to authorize a rational jury to conclude that Bonner intended to commit an assault against Moses using a deadly weapon (the revolver) and that Moses died as the result of being shot by Bonner. Bonner admitted to Grier that he shot Moses, although he immediately claimed that it was an accident. However, expert testimony from a firearms examiner established that the type of gun used to shoot Moses either required force to pull the hammer back as a separate preparatory act before firing or required a greater degree of force against the trigger to both draw the hammer back and discharge the weapon. Bonner fled immediately following the shooting, and the police never recovered the gun. Moments before the shooting, Bonner had unloaded the bullets from his gun and placed them on the windowsill after Grier asked him not to have a gun in the apartment, but the bullets were gone from the windowsill after the shooting. From this evidence, the

7

jury could reasonably infer that Bonner reloaded the gun and then shot Moses. Accordingly, the jury was free to reject Bonner's statement to Grier that the shooting was "an accident." See *Eberhart v. State*, 307 Ga. 254, 262 (2) (a) (835 SE2d 192) (2019). The evidence was thus sufficient to support the jury's determination that Bonner committed an aggravated assault against Moses with a deadly weapon resulting in Moses's death, as charged in the indictment. Accordingly, the evidence was sufficient to support Bonner's conviction for felony murder predicated on the aggravated assault. See *Jackson*, 443 U. S. at 319 (III) (B); see also *Vega v. State*, 285 Ga. 32, 33 (1) (673 SE2d 223) (2009) ("'It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence.'" (citation omitted)); *Atkins v. State*, 310 Ga. 246, 248-249 (1) (850 SE2d 103) (2020). Therefore, this enumeration fails.

3. Bonner next argues that the trial court erred in failing to instruct the jury on accident. We disagree.

Under Georgia law, in order to warrant a jury instruction on the defense of "accident," more must be shown than simply an unintended or undesirable outcome. There must also be evidence of an absence of criminal intent or negligence. See OCGA § 16-2-2 ("A person shall not be found guilty of any crime committed by misfortune or accident where it satisfactorily appears there was no criminal scheme or undertaking, intention, or criminal negligence."); see also *Kellam v. State*, 298 Ga. 520, 523 (2) (783 SE2d 117) (2016) ("[I]n order to claim accident, it must be established a defendant acted without criminal intent, was not engaged in a criminal scheme, and was not criminally negligent, i.e., did not act in a manner showing an utter disregard for the safety of others who might reasonably be expected to be injured thereby." (citation and punctuation omitted)). The evidence justifying the accident defense instruction need only be "slight," and "whether the evidence presented is sufficient to authorize a charge is a question of law." *Wilson v. State*, 279 Ga. 104, 105 (2) (610 SE2d 66) (2005).

Immediately following the shooting, Bonner exclaimed to Grier, "I ain't tried to. It was an accident." In his brief on appeal, Bonner argues that these statements and other evidence about the shooting create the slight evidence needed to justify giving an instruction on accident. Conclusory "[c]laims by a defendant that he 'didn't mean to do it' and 'it was an accident' are insufficient without more to authorize a charge on accident." *Mills v. State*, 287 Ga. 828, 832 (4) (700 SE2d 544) (2010) (citing *McDade v. State*, 270 Ga. 654, 657 (5) (513 SE2d 733) (1999)). Thus, there must be some other evidence showing that the shooting occurred in the "absence of a criminal scheme, undertaking, intention, or criminal negligence" to authorize a jury instruction on accident. OCGA § 16-2-2; see also *Wainwright v. State*, 305 Ga. 63, 71 (5) (a) (823 SE2d 749) (2019) (explaining that when the defendant acts with criminal intent or criminal negligence, a charge on accident is not warranted).

Other than Bonner's conclusory statement to Grier, no other evidence at trial suggested that Bonner's shooting of Moses was accidental. Bonner points to evidence that his gun was rusty, but

10

there was no evidence that the gun malfunctioned and fired accidentally as the result of rust. Moreover, the firearms examiner testified that rust could, at most, prevent a gun from firing (rather than cause it to fire accidentally).

Bonner also notes that there was evidence that he was tired on the morning of the shooting, that he and Moses had a "good" and "playful" relationship, and that they were heard laughing and talking moments before the shooting. However, such evidence gave no indication of how the shooting of Moses actually occurred. By contrast, the State presented evidence that Bonner had placed all of the bullets from his gun on the windowsill when he was confronted by Grier about having a gun in her apartment. He would thus have had to later reload at least one round of ammunition into his gun before shooting Moses. The evidence also showed that Moses was shot in the jaw and that, depending on the type of revolver he had, Bonner would have had to either pull the gun's hammer back before firing or apply a greater degree of force to pull the trigger and fire. None of that evidence suggested that Bonner shot Moses

11

accidentally. To the contrary, such evidence suggests that Bonner acted with at least criminal negligence, which negates his ability to avail himself of the defense of accident. See *New v. State*, 260 Ga. 441, 442 (1) (396 SE2d 486) (1990) ("[A]iming a gun at someone's face is an utter disregard for the safety of that person and constitutes criminal negligence. Therefore, according to OCGA § 16-2-2, the defense of accident is inapplicable."). Because an instruction on the law of accident was therefore not authorized by the evidence presented at trial, the trial court did not err by refusing to give it. See *Campbell v. State*, 263 Ga. 824, 825 (3) (440 SE2d 5) (1994) ("[U]nless there was evidence to authorize a finding that the fatal shot had been fired without any 'criminal scheme or undertaking, intention, or criminal negligence' on the part of appellant, the trial court correctly refused to give a charge on the defense of accident."). Accordingly, this enumeration of error fails.

*Judgment affirmed. All the Justices concur.*

Decided May 17, 2021.

Murder. Muscogee Superior Court. Before Judge Land.

*Angela Dillon*, for appellant.

*Julia F. Slater, District Attorney, William D. Kelly, Jr., Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Ashleigh D. Headrick, Assistant Attorney General*, for appellee.